S05A0021. FOLSOM et al. v. CITY OF JASPER et al.
(612 SE2d 287)

FLETCHER, Chief Justice.

Scarlett Folsom appeals from an order of the Pickens County Superior Court affirming the City of Jasper's decision to suspend Folsom's liquor license for thirty days and impose a one-year probationary period. The punishment was imposed after the City determined that Folsom and her establishment, the Blue Rodeo Café, were guilty of three violations of the City's Alcoholic Beverages Ordinance. The City claimed that Folsom twice violated the Ordinance's restrictions on alcohol advertisements, and that the third violation occurred when a patron of the Café was allegedly battered by an employee of the Café. Because the relevant parts of the City's Alcoholic Beverages Ordinance fail to pass constitutional scrutiny, we reverse.

1. The Ordinance involved in this case prohibits all "advertisement[s] of any kind advertising alcoholic beverages for sale or advertising the brand names or prices of alcoholic beverages. . . ." The Ordinance also bans businesses from advertising their business name or trade name if that name includes any of the specifically prohibited words listed in the Ordinance, all of which are related to alcohol. The City cited the Café for two violations of this portion of the Ordinance. The first violation involved a newspaper advertisement for a New Year's Eve party that promoted "Balloon Drops, Party Favors, and Champagne all for $15.00 per person." The second violation occurred when the Café purchased another newspaper advertisement promoting a "Miller Lite Promotion Party Saturday Night." The Café argues that the Ordinance constitutes a "blanket prohibition against truthful, non-misleading speech about a lawful product" in violation of the First Amendment. We agree.

In *44 Liquormart, Inc. v. Rhode Island*,[1] the United States Supreme Court set forth the standard for determining when laws

---

[1] 517 U. S. 484 (116 SC 1495, 134 LE2d 711) (1996).

restricting commercial speech related to alcoholic beverages violate the First Amendment.

(a) The first inquiry under the *44 Liquormart* analysis is whether the prohibition constitutes a "blanket prohibition against truthful, nonmisleading speech about a lawful product."[2] Although the Supreme Court did not articulate the full parameters of this inquiry, it is sufficient for this case that the Supreme Court found that a ban on the advertisement of the prices of alcoholic beverages qualified as such a "blanket prohibition."[3] The ordinance in this case goes even further — it prohibits the advertisement of alcoholic prices, brand names, and even the business's name if it contains certain words. Thus, the Ordinance constitutes a "blanket prohibition" on commercial speech.

The City argues that its Ordinance does not constitute a "blanket prohibition" because it allows the advertising of alcoholic beverages within the licensed establishment, so long as they are not visible from the outside. But it undermines the value of advertising to only allow the Café to advertise to people who have already decided to patronize their establishment. Further, in *44 Liquormart*, the prohibition was still considered a "blanket prohibition" even though the law allowed the advertising of alcohol prices within the retailer's premises so long as it was not visible from outside the store.[4]

As a "blanket prohibition on truthful, nonmisleading speech," the Ordinance in this case must be reviewed with "special care" under the four-part test for commercial speech,[5] originally set forth by the U. S. Supreme Court in *Central Hudson Gas &c. Corp. v. Public Svc. Comm. of New York.*[6] "[B]ans against truthful, nonmisleading commercial speech . . . usually rest solely on the offensive assumption that the public will respond 'irrationally' to the truth. The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good."[7] Accordingly, this kind of restriction on speech will "rarely survive constitutional review."[8]

Both the Café and the City stipulate that the first two prongs of the *Central Hudson* test are met, namely that the Ordinance prohibits nonmisleading speech about a lawful product and that it seeks to

---

[2] Id. at 504.
[3] Id.
[4] Id. at 489.
[5] Id. at 504.
[6] 447 U. S. 557 (100 SC 2343, 65 LE2d 341) (1980).
[7] (Citations omitted.) *44 Liquormart*, 517 U. S. at 503.
[8] Id. at 504.

promote temperance,[9] a substantial governmental interest. Thus, the only remaining questions under *Central Hudson* are whether the Ordinance directly advances that governmental interest and, if so, whether it does not restrict speech any more than is necessary to achieve that interest.[10]

(b) In *44 Liquormart*, the Supreme Court held that "commercial speech regulation 'may not be sustained if it provides only ineffective or remote support for the government's purpose.' "[11] For the Ordinance to be valid in this case, therefore, the City must show that it will materially and *"significantly* reduce alcohol consumption."[12] This it has failed to do. The City has provided no evidence whatsoever that the ban on alcohol advertising will "significantly advance the [City's] interest in promoting temperance."[13]

The City argues that restricting the availability of information regarding alcohol sales will reduce the prevalence of both underage drinking as well as fortuitous drinking by adults. But the City cites absolutely no evidence in support of its assertions, and reliance on " 'speculation [and] conjecture' . . . is an unacceptable means of demonstrating that a restriction on commercial speech directly advances the State's asserted interest."[14] Thus, the City has failed to satisfy the third prong of the *Central Hudson* test, that its restriction will materially and significantly advance its substantial governmental interest.

(c) Neither can the City satisfy the fourth prong of the *Central Hudson* test, that its restriction on speech is no more extensive than necessary.[15] As noted by the Supreme Court in *44 Liquormart*, the City has numerous other means to reduce alcohol consumption without curtailing speech.[16] It could raise taxes to increase the cost of alcohol, implement educational programs to increase awareness of the dangers of alcohol, or even ban the sale of alcohol outright. Each of these alternatives would achieve the City's goals without infringing on protected speech. Thus, the City has failed to show that its Ordinance establishes "a 'reasonable fit' between its abridgement of

---

[9] Webster's Third New International Dictionary (1961) defines temperance, for this purpose, as "moderation in or abstinence from the use of intoxicating drink."

[10] *44 Liquormart*, 517 U. S. at 504.

[11] Id. at 505 (quoting *Central Hudson*, 447 U. S. at 564).

[12] (Emphasis in original.) Id.

[13] Id.

[14] Id. at 507 (citing *Edenfield v. Fane*, 507 U. S. 761, 770 (113 SC 1792, 123 LE2d 543) (1993)).

[15] *Central Hudson*, 447 U. S. at 566.

[16] *44 Liquormart*, 517 U. S. at 507-508, 530-531.

speech and its temperance goal."[17]

Accordingly, the City's Ordinance prohibiting the advertisement of alcoholic beverages cannot pass constitutional scrutiny, and the City's punishment against the Café cannot be justified based on the Café's two violations of that aspect of the Ordinance.

2. In addition to the advertisement violations, the City also justified its punishment by alleging that an employee of the Café battered one of the Café's customers.[18] The Ordinance authorizes the city to suspend or revoke an alcohol license if the City Council determines, "to their own satisfaction," that the licensee is guilty of any "violation of federal or state law." Folsom argues that the Ordinance is overbroad and violates due process because it allows the City to revoke or suspend a license if the City Council, in its discretion, determines that any violation of law has occurred, regardless of whether the violation is related to the purposes of the licensing scheme.

(a) Because the Ordinance does not in any way limit the types of violations that would justify revocation of a license to those violations related to the regulatory purpose of the license, the Ordinance is facially overbroad.[19] In this case, however, because the Café's challenge to this aspect of the Ordinance does not implicate its First Amendment rights, Folsom and the Café are required to show that the Ordinance is overbroad as applied.[20]

In order to show that the Ordinance is overbroad as applied, Folsom must show that the alleged violation, the battery of a patron by an employee, is unrelated to the regulatory purposes of the alcohol license. This they cannot do. The risk of unruly patrons, and the risk of an overzealous response to that unruliness by employees of the alcohol-serving establishment, is clearly one of the reasons for the State's regulation of the sale and consumption of alcoholic beverages at establishments like the Café. Therefore, the Ordinance is not overbroad as applied in this case.

(b) Folsom also argues, however, that the Ordinance violates due process because it fails to set forth any ascertainable standards for

---

[17] Id. at 507 (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U. S. 469, 480 (109 SC 3028, 106 LE2d 388) (1989)).

[18] The Café claimed that its employee acted in self-defense, and no criminal prosecution has occurred.

[19] See, e.g., *Pel Asso, Inc. v. Joseph*, 262 Ga. 904 (4) (427 SE2d 264) (1993) (a LaGrange ordinance that allowed license revocation for unlawful acts "unconnected with the regulatory purpose of the license" was facially overbroad); but see *Bryant v. Mayor &c. of Americus*, 252 Ga. 76, 77 (311 SE2d 174) (1984) (ordinance authorizing revocation of liquor license for violation of law "relating to the use and sale of drugs or alcohol" is not overbroad).

[20] *Thelen v. State*, 272 Ga. 81 (526 SE2d 60) (2000) (where First Amendment rights are not at issue, challenge to ordinance on grounds of vagueness can only be made as applied).

determining whether a violation of state or federal law justifying license revocation has in fact occurred. The Ordinance allows the City Council to revoke or suspend a license if they determine, "to their own satisfaction," that any violation of law has occurred. We agree with Folsom that the discretionary nature of the City Council's revocation authority, combined with the complete absence of any ascertainable limits as to the types of violations that would justify revocation, violates the license holder's rights to due process.

Under Georgia law, "the suspension or revocation of [alcohol] permits or licenses shall be in accordance with the following guidelines of due process . . . (1) [t]he governing authority shall set forth ascertainable standards in the local licensing ordinance upon which all decisions pertaining to these permits or licenses shall be based."[21] Ordinances pertaining to the issuance or revocation of liquor licenses in Georgia must provide "sufficient objective standards to control the discretion of the governing authority and adequate notice to applicants [or licensees] of the criteria for issuance [or revocation] of a license."[22]

In *Bryant v. Mayor &c. of Americus*, this Court held that an ordinance that committed "to the sole discretion of the mayor and city council the determination of whether or not these grounds to revoke exist in a given case . . . does not per se derogate from or conflict with due process principles."[23] But in that case, the ordinance did not violate principles of due process because even in committing the decision to the discretion of the city council, the ordinance set forth specific grounds for revocation and thereby limited the scope of the council's discretion. Thus, the ordinance met the "ascertainable standards" requirement of the statute by clearly limiting the council's discretion to a determination of whether the specifically proscribed conduct had in fact occurred.

In this case, to the contrary, there are no such limits on the council's discretionary revocation authority, and no "ascertainable standards" to guide or limit the grounds for the Council's decision. The Ordinance authorizes the Council to revoke an alcohol license if it determines in its own discretion that *any* legal violation has occurred. That type of absolute discretion in both the determination of the occurrence of the violation as well the relevance of the violation does not comport with basic principles of due process or the statutory requirements. "Absolute and uncontrolled discretion by governing

---

[21] OCGA § 3-3-2 (b).

[22] *Arras v. Herrin*, 255 Ga. 11, 12 (334 SE2d 677) (1985) (quoting *Levendis v. Cobb County*, 242 Ga. 592 (250 SE2d 460) (1978)).

[23] 252 Ga. at 77.

authorities to issue [or revoke] licenses invites abuse, and exercise of discretion by states and local governments must be tempered with ascertainable standards. . . ."[24] Accordingly, that part of the Jasper Ordinance authorizing license revocation for any legal violation that the Council determines to its own satisfaction to have occurred violates basic principles of due process and cannot stand.

Because all of the grounds purportedly justifying the suspension and probation of Folsom's liquor license, as set forth in the City's Alcoholic Beverages Ordinance, fail constitutional scrutiny, the judgment of the Superior Court upholding the punishment imposed by the City of Jasper is hereby reversed.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 26, 2005.

*Casey, Gilson & Leibel, Steven K. Leibel, Chagay Weiss*, for appellants.

*Pickett, Pickett & Pickett, Will H. Pickett, Jr.*, for appellees.

---

[24] *Arras*, 255 Ga. at 12 (quoting *Hornsby v. Allen*, 326 F2d 605, 612 (5th Cir. 1964)).