In the Matter of the ON–SALE LIQUOR LICENSE, CLASS B, Held by T.J. Management of Minneapolis d/b/a Gabby's Saloon and Eatery.

No. A08–0681.

Court of Appeals of Minnesota.

March 31, 2009.

Scott G. Harris, Leonard, Street & Deinard, Minneapolis, MN, for relator T.J. Management of Minneapolis d/b/a Gabby's Saloon and Eatery.

Susan L. Segal, Minneapolis City Attorney, James A. Moore, Franklin Reed, Lee Wolf, Assistant City Attorneys, Minneapolis, MN, for respondent City of Minneapolis.

Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

KALITOWSKI, Judge.

Relator T.J. Management of Minneapolis, d/b/a Gabby's Saloon and Eatery (Gabby's), challenges the imposition of adverse conditions on its liquor license by respondent City of Minneapolis (the city). Absent any violations of laws or ordinances, or any other ground to suspend or revoke its license, Gabby's argues that the city lacks the authority to impose conditions on its previously issued license. Gabby's also argues that even if the city has the authority to impose such conditions, imposing conditions because of its customers' conduct occurring away from its premises violates its due process rights. Gabby's further contends that the imposition of the conditions here violates its substantive due process, equal protection, and free speech rights, as well as its rights under the Minnesota Human Rights Act (MHRA). Gabby's requests attorney fees for these claimed constitutional and MHRA violations.

## FACTS

Unless otherwise noted, the facts and quotations are taken from the record and findings of the administrative law judge (ALJ) who presided over the hearing regarding Gabby's' liquor license. Relator operates Gabby's Saloon and Eatery at 1900 Marshall Street Northeast in Minneapolis, Minnesota. In 1986, the Minneapolis City Council (the city council) issued Gabby's a class B on-sale liquor license and annually renewed the license for 21 years without condition. Under its unconditional liquor license, Gabby's may stay open for business until 2:00 a.m. and maintain a maximum occupancy of 689 patrons.

On August 7, 2006, a city councilmember e-mailed a number of city personnel, stat-

ing that she had received complaints about misconduct in the neighborhood surrounding Gabby's, that Gabby's violated its capacity limits, that its owners were regularly out of town, and that the neighborhood had "not had a homicide, yet [sic] but it is a recipe for one." Among the recipients were the city's deputy director for licensing and consumer services (deputy director) and the commander of the second police precinct, where Gabby's is located. At the deputy director's request, a City of Minneapolis license inspector conducted an inspection of Gabby's on the evening of September 30, 2006. Between the hours of 11:45 p.m. and 2:45 a.m., the inspector observed people littering, urinating in public, and yelling, and heard vehicles with amplified music in the vicinity of Gabby's. The license inspector made no mention in his report of overcrowding or lack of appropriate management personnel.

The commander of the second police precinct met with Gabby's' owner Jeff Ormond on August 8, 2006, to discuss the neighborhood disruption issues that the commander believed were caused by Gabby's' customers. The commander "impressed upon [Ormond] that his responsibility is his licensed premises, but it would be to his business' advantage to be proactive in addressing issues that are occurring in the surrounding neighborhood after his customers are cleared from his lot." The commander also told Ormond that he was disappointed with the number of police resources being expended to address issues with Gabby's' customers, and that he was concerned with officer safety. Ormond stated that during this meeting, the commander encouraged Ormond to solve the neighborhood problems by changing "the venue, and [the commander's] words were 'to go to a Country Night.'"

On August 30, 2006, the councilmember, the precinct commander, the deputy director, and other city personnel convened to discuss conditions that could be placed on Gabby's' liquor license to reduce disruptive activity in the neighborhood. At the hearing before the ALJ, the deputy director acknowledged that the proposed license conditions would require the voluntary cooperation of the owners of Gabby's and testified that the group discussed the challenges in trying to revoke the license if Gabby's refused to voluntarily agree to the license conditions. The deputy director also testified that despite the councilmember's complaint about overcrowding, he had determined that overcrowding was not an issue at Gabby's.

The deputy director also requested that the Minneapolis Police Department (MPD) document police activity occurring at or nearby Gabby's from November 2005 through November 2006. An MPD lieutenant reviewed police reports and service calls occurring within Gabby's' neighborhood and the adjacent neighborhood. The lieutenant determined that 25 of the 62 police reports identified occurred in a "few block radius" surrounding Gabby's on Thursday or Saturday evenings when Gabby's was holding hip-hop night.

On November 16, 2006, the deputy director arranged a "Licensing Settlement Conference" with the owners of Gabby's, representatives of the MPD, an attorney for the city, city inspectors, and other city personnel. At the conference, the deputy director presented the police reports that the MPD had attributed to Gabby's. The group discussed potential security plans for Gabby's, marketing choices made by Gabby's, and the types of drink specials that Gabby's provided. The group also discussed a dress code proposed by the MPD for Gabby's. The meeting ended without a firm resolution.

More than four months later, on March 23, 2007, the Minneapolis City Council's

Public Safety & Regulatory Services Committee (the PS & RS) recommended that the following adverse action be taken based on the November 16, 2006 meeting: (1) a financial penalty of $25,000 be levied against Gabby's; (2) the occupancy limit of Gabby's be reduced to 400 customers at any given time; (3) Gabby's submit a comprehensive management plan to the city; (4) a properly trained manager or owner be on site during business hours; (5) Gabby's discontinue the sale of alcohol at 11:00 p.m.; (6) Gabby's agree to close at midnight every day of the week; (7) Gabby's increase the cover charge to at least $15; and (8) Gabby's eliminate free drink events, such as "Ladies Night," and replace them with reduced drink specials.

On March 31, 2007, two license inspectors conducted an inspection in response to neighborhood residents' complaints about noise and disturbances at Gabby's. Around 2:00 a.m., the inspectors videotaped the neighborhood surrounding Gabby's and recorded: customers urinating in public; customers playing loud music in their cars; customers smoking in groups of 4–5 people around parked cars; a vehicle accident; cars "burning rubber"; police vehicle lights flashing in residential windows; and customers fighting.

In April 2007, shortly after the PS & RS released its proposed conditions and after the city had conducted its investigations, the city renewed Gabby's' liquor license for one year without imposing any conditions. When Gabby's refused to voluntarily agree to the conditions and fine proposed by the PS & RS, the city instituted this adverse license action, seeking to impose the conditions. The city sought a recommendation from the ALJ as to whether grounds existed for the city to revoke or restrict Gabby's' liquor license. In his opening statement to the ALJ, an assistant city attorney acknowledged that the law did not expressly permit the imposition of conditions against Gabby's stating "[t]his is stretching the law a little bit."

At the hearing, the city relied on the police reports assembled by the MPD, 12 community impact statements, and the city license inspectors' investigation report. The ALJ heard testimony that "the Second Precinct [wherein Gabby's is located] has crime issues that are unrelated to activities at Gabby's," and that it is "just a coincidence that Gabby's happens to be located legally in the precinct that has the fewest resources." A lieutenant for the MPD testified that he had not seen any police reports showing that Gabby's encouraged or tolerated illegal conduct.

The ALJ was presented with an e-mail from the assistant city attorney to the deputy director, a license inspector, and an MPD lieutenant, that stated in part that Gabby's "will argue that the scope of [Minneapolis Code of Ordinances section] 259.250 is limited solely to the license premises including parking areas and not to off-premises activity—that is true and we'll have to prove that it implicitly covers such nearby off-premises activity with a demonstrable nexus to the business." The city also stipulated that Gabby's has not violated its liquor license or any statute, rule, or ordinance, relating to the sale of liquor at its premises.

The ALJ determined that the city lacked the authority to revoke Gabby's' liquor license, reasoning that Minn.Stat. § 340A.415 sets forth the only grounds for license revocation and that Gabby's had complied with all statutes, rules, and ordinances relating to alcoholic beverages. But the ALJ further concluded that the city had demonstrated by a preponderance of the evidence that "good cause" existed for the city to impose conditions or restrictions against Gabby's' license pursuant to Minneapolis, Minn., Code of Ordinances

§ 259.250(9), which states that "[a]dverse license action may be based upon good cause as authorized by Chapter 4, Section 16 of the [Minneapolis] Charter." Although the ALJ recommended that the city impose appropriate license conditions, the ALJ noted that the conditions recommended by the PS & RS would reduce revenues at Gabby's so severely that it would be forced to close.

On February 15, 2008, the city council adopted the ALJ's findings of fact and report. The city council adopted the license conditions as recommended by the PS & RS requiring Gabby's to: (1) pay $25,000 to Licenses and Consumer Services; (2) submit to the city an acceptable, comprehensive management plan that will address security, alcohol service, and over service, as well as criminal activity and neighborhood livability issues associated with the establishment; (3) ensure that a properly trained manager or owner is on site during business hours at all times; (4) reduce the maximum number of occupants based on 175 durable parking spots and 2.5 occupants per spot, to no more than 438 customers at any given time, including staff and patio occupants; and (5) eliminate any free drink events and replace them with reduced drink specials. The council voted to stay the condition reducing the occupancy limits until after the time to appeal the decision had passed.

The parties also state that Gabby's has filed a complaint against the city in the United States District Court, District of Minnesota, alleging that imposition of conditions on the liquor license violated its constitutional rights, the MHRA, and the Minnesota Administrative Procedures Act. On April 18, 2008, Gabby's petitioned this court for a writ of certiorari. Pursuant to agreement of the parties, the federal suit was stayed pending the outcome of this appeal.

## ISSUES

1. Does the city's imposition of conditions on Gabby's' license because of the off-premises activity of its patrons violate Gabby's' due process rights?

2. Does the city have the authority to impose conditions on a license that was previously issued without conditions, absent a valid basis to suspend or revoke the license?

3. Does this court's scope of review on certiorari allow consideration of Gabby's' additional constitutional and MHRA claims?

## ANALYSIS

### I.

The Minneapolis Code of Ordinances (MCO) § 259.250(9) (2008), states in relevant part that "[a]dverse action may be based upon good cause as authorized by Chapter 4, Section 16 of the Charter. This section shall not preclude the enforcement of any other provisions of this Code or state and federal laws and regulations." Gabby's contends that the city improperly applied the phrase "good cause" in this ordinance to justify the imposition of the conditions based on the off-premises activities of its patrons. We agree.

### Standard of Review

"Municipal authorities have broad discretion to determine the manner in which liquor licenses are issued, regulated, and revoked." *Bourbon Bar & Cafe Corp. v. City of St. Paul*, 466 N.W.2d 438, 440 (Minn.App.1991). "A city council's decision may be modified or reversed if the city violated constitutional provisions, exceeded its statutory authority, made its decision based on unlawful procedure, acted arbitrarily or capriciously, made an error of law, or lacked substantial evidence in view of the entire record submitted."

*Montella v. City of Ottertail,* 633 N.W.2d 86, 88 (Minn.App.2001) (quotation omitted) (affirming city's decision to deny the relators a liquor license). Our review is confined to the record before the city council at the time it made its decision. *Hard Times Cafe, Inc. v. City of Minneapolis,* 625 N.W.2d 165, 173 (Minn.App.2001).

▬ We defer to a city council's decision to revoke a liquor license. *Sabes v. City of Minneapolis,* 265 Minn. 166, 171, 120 N.W.2d 871, 875 (1963). But constitutional due process claims, as well as the interpretation and application of a city ordinance, are questions of law which we review de novo. *Staeheli v. City of St. Paul,* 732 N.W.2d 298, 304, 307 (Minn.App. 2007). The party seeking reversal has the burden of demonstrating error. *Montella,* 633 N.W.2d at 88.

### Due Process Clause

Gabby's argues that it was denied due process by the city's imposition of conditions on its liquor license pursuant to the good cause provision of MCO § 259.250, subd. 9. We agree.

▬ To satisfy the Due Process Clause, a city ordinance permitting adverse action against a liquor license must provide sufficient objective standards to control the discretion of the governing authority and must give adequate notice to the licensee of the criteria used to permit adverse action against the license. *See* 45 Am.Jur.2d *Intoxicating Liquors* § 151 (2007) (citing *Folsom v. City of Jasper,* 279 Ga. 260, 612 S.E.2d 287 (2005) (holding due process rights violated where city council had discretion to determine both whether a violation of law had occurred and that such violation constituted grounds to suspend or revoke the license)). "The constitutionality of an ordinance is a question of law, which this court reviews de novo." *Hard Times Cafe,* 625 N.W.2d at 171 (quo-

tation omitted). A municipal ordinance is presumed constitutional. *Id.* (citing *City of St. Paul v. Dalsin,* 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955)). The burden of proving that an ordinance is unreasonable rests on the party attacking its validity. *Id.* (quotation omitted).

▬ "Vague statutes are prohibited under the due process clause of the fourteenth amendment." *Hard Times Cafe,* 625 N.W.2d at 171 (quotation omitted). A statute is void for vagueness if it defines an act in a manner that encourages arbitrary and discriminatory enforcement or if the law is so indefinite that people must guess at its meaning. *Humenansky v. Minn. Bd. of Med. Exam'rs,* 525 N.W.2d 559, 564 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995), *cited in Hard Times Cafe,* 625 N.W.2d at 171. The use of general language in a statute does not render it vague, and an entity challenging the constitutionality of a statute on vagueness grounds must show that the ordinance lacks specificity as to the entity's own behavior rather than some hypothetical situation. *Hard Times Cafe,* 625 N.W.2d at 171–72.

▬ Here, the ALJ found that (1) Gabby's has not been cited for a violation of any state liquor law or ordinance other than one instance in 1999; (2) the city stipulated that revocation was not authorized because Gabby's did not violate Minn. Stat. § 340A.415; and (3) because Gabby's implemented appropriate security measures, adverse action could not be taken against its license based on the grounds set forth in MCO §§ 259.250(1) or 259.250(4).

In deciding that the city could impose conditions on Gabby's' liquor license, the ALJ relied on the "good cause" provision of MCO § 259.250(9). In applying this provision, the ALJ relied solely on the off-

premises activity of patrons of Gabby's concluding that the definition of "good cause" allows for the consideration of "livability concerns" of those in the surrounding residential area. The ALJ found that good cause existed to impose restrictions on Gabby's' liquor license because of the negative impact on residential neighbors of the popular Thursday- and Saturday-night events. On these nights, Gabby's usually reaches its maximum capacity of 689 occupants, its patrons park on the streets, and as the patrons leave, they speak loudly, play loud music from their vehicles, and police flash the lights from their squad cars to keep people and traffic flowing. All of this activity is disruptive to nearby residents. The ALJ also found that the community impact statements, which complained of disruptive neighborhood activity by Gabby's' patrons off of Gabby's' premises, demonstrated that the city had good cause to impose conditions. The ALJ found further good cause in the amount of police resources used by Gabby's.

But the city stipulated that Gabby's did not violate any statute or law including the state nuisance statute, that none of the five statutory bases for revocation exists, that Gabby's violated no liquor laws, and that there was no evidence that Gabby's encouraged or tolerated illegal conduct. Moreover, the ALJ found that Gabby's implemented extensive security measures to keep its patrons safe, including (1) the use of metal detectors; (2) employing up to ten off-duty police officers on Thursday and Saturday nights; and (3) using a computer system to check Gabby's "trespassed" list which contains the names, birthdates, and driver's license numbers of all persons who have been banned from Gabby's for life. On these facts, we conclude that the "good cause" standard did not put Gabby's in a position to know that it would be subject to adverse action due

to the off-premises actions of its patrons and "neighborhood livability" issues.

In *Hard Times Cafe*, we addressed an as-applied challenge to the constitutionality of the term "good cause" in the city charter. 625 N.W.2d at 171–73. In that case, "multiple drug transactions occurred on and around [Hard Times Cafe's] business premises," and "although the cafe itself was not found to have violated any laws, illegal activity that arguably posed a threat to public safety occurred *on its premises.*" *Id.* at 172 (emphasis added). Because we could not "say that ordinary people would have to guess that such activity [of illegal drug transactions] was of the type that constituted good cause for possible adverse action with regard to a license," we held that the city charter's good cause provision was not unconstitutionally vague as applied. *Id.* We further held that because the charter specifically provides that a license may be revoked "upon conviction before any court of any person holding such a license for a violation of the provisions of any law, ordinance or regulation relating to the exercise of any right granted by such license," it is clear that a license holder's violation of laws relating to the exercise of a right granted by the license could lead to revocation. *Id.* (quoting Minneapolis, Minn., City Charter ch. 4 § 16).

In conclusion, Gabby's was denied due process when the city imposed adverse conditions on its liquor license. The record indicates that Gabby's took extensive security measures to protect its patrons. Moreover, Gabby's had not committed any violation of law or ordinance. Nor were there violations by its patrons on Gabby's' premises to justify suspension or revocation of Gabby's' license. Rather, the ALJ and the city relied solely on the off-premises behavior of Gabby's' patrons in imposing conditions based on the ordinance's

good cause provision. In contrast to the holding of *Hard Times Cafe* that on-premises illegal activity provides a license holder with notice that they may be subject to adverse action, we conclude here that Gabby's did not have adequate notice that the off-premises conduct of its patrons and neighborhood "livability" issues could be the basis of adverse license action. Therefore, we reverse the city council's decision because the decision violates Gabby's' constitutional due process rights.

## II.

Gabby's also argues that the city exceeded its legal authority by imposing conditions on its previously issued liquor license, because no statutory provision or municipal-code provision grants that authority to the city and because the city stipulated that it had no basis to penalize by suspending or revoking the license. We agree.

■■■■ "No citizen has an inherent or vested right to sell intoxicating liquors, and municipal authorities have broad discretion within their geographical jurisdiction to determine the manner in which liquor licenses shall be issued, regulated, and revoked." *Sabes v. City of Minneapolis*, 265 Minn. 166, 171, 120 N.W.2d 871, 875 (1963) (footnote omitted). "Inherent in the right to control the sale of liquor is the power to regulate activities on the licensed premises." *Id.* The city council has the duty "to decide whether the licensee has been guilty of such unlawful conduct in the operation of his business that its continuance is detrimental to the public good." *Id.* In reviewing the municipality's proceedings, it is this court's function

"only to determine whether the council exercised an honest and reasonable discretion, or whether it acted capriciously, arbitrarily, or oppressively." *Id.*

### Limited Powers of Municipalities

■■■ "Generally, 'municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred.'" *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 6 (Minn.2008) (quoting *Mangold Mw. Co. v. Vill. of Richfield*, 274 Minn. 347, 357, 143 N.W.2d 813, 820 (1966)). Among other powers, cities have the power to enact and enforce ordinances to promote " 'health, safety, order, convenience, and the general welfare.'" *Id.* (quoting Minn.Stat. § 412.221, subd. 32 (2006)). We therefore examine whether the city has express or implied power to place conditions on existing liquor licenses.

### Express Authority to Regulate Bars and Taverns

■■■ There are several statutory provisions that provide the city with liquor-licensing authority, but none expressly permit the city to condition a liquor license. First, Minnesota state law provides five specific grounds [1] for the city to penalize, revoke or suspend a liquor license, impose a civil penalty, or any combination of the above. Minn.Stat. § 340A.415 (2008). This statute does not expressly permit the city to place conditions on a previously issued license. *Id.*

---

1. The five bases for which a statutory sanction may be imposed are when the license or permit holder: (1) sold alcoholic beverages to another retail licensee for resale purposes; (2) purchased alcoholic beverages from another retail licensee for resale purposes; (3) conducted or permitted gambling conduct on the licensed premises in violation of the law; (4) failed to remove or dispose of alcoholic beverages when ordered by the commissioner to do so under section 340A.508, subdivision 3; or (5) failed to comply with an applicable statute, rule, or ordinance relating to alcoholic beverages. Minn.Stat. § 340A.415.

Second, the Minneapolis City Charter authorizes the city council to regulate bars and taverns. The charter grants to the city council the power to enact, enforce, amend, or repeal "*all such ordinances* . . . for these purposes the said City Council shall have authority *by such ordinances* . . . to license and regulate . . . taverns . . . and all persons vending, dealing in or disposing of . . . liquors." Minneapolis, Minn. City Charter (MCC), ch. 4, § 5 (emphasis added). This section of the charter does not confer upon the city any power to impose conditions on liquor licenses, but rather authorizes the city council to pass ordinances by which the council may regulate businesses that possess or seek to possess a liquor license.

Third, section 259.250 of the MCO lists specific business license management responsibilities, and states that the "[f]ailure to comply with any of these standards and conditions [set forth in section 259.250] shall be adequate grounds for the *denial, refusal to renew, revocation or suspension* of said license or permit." (Emphasis added.) The city argued before the ALJ that it has the authority to impose adverse restrictions under MCO § 259.250(1)[2] or § 259.250(4).[3] But the ALJ rejected this claim, finding that Gabby's implemented appropriate security measures and took appropriate action to prevent statutory and ordinance violations on its premises.

Finally, MCO § 259.250(9) states that "[a]dverse license action may be based upon *good cause* as authorized by Chapter 4, Section 16 of the Charter." (Emphasis added.) But the only adverse action permitted in that section of the charter is revocation of a license, not the imposition of conditions. *See* MCC, ch. 4, § 16 (providing that any license issued by the city council may be "*revoked* by the City Council at any time upon proper notice and hearing for good cause" (emphasis added)).

Because the city has no express authority, by ordinance or statute, to impose conditions on a license, we next consider whether the city has the implied authority to impose conditions on a liquor license.

### Implied Authority to Condition

■■■ In the absence of explicit authority under the relevant state statutes, municipal ordinances, and the city charter, the ALJ relied on the following language in *City of Duluth v. Cerveny* in concluding that the city has the implied authority to impose conditions upon Gabby's' liquor license:

> The power to regulate the retail sale of alcohol and alcoholic beverages conferred upon the governing board of a city includes the power to prescribe such reasonable rules and impose such reasonable restrictions as to the manner and circumstances in which the business shall be conducted as will tend to promote order and protect the public from harm.

218 Minn. 511, 516, 16 N.W.2d 779, 783 (1944) (quotation omitted). But the facts of *Cerveny* are distinguishable from the present case and the above quotation is taken out of context. In that case, appellant Cerveny owned and operated a res-

---

**2.** MCO § 259.250(1) states in part: "It shall be the responsibility of the licensee to take appropriate action to prevent further violations . . . on the premises." It lists specific violations to be prevented, including disorderly conduct. MCO § 259.250(1)h. The violations at issue in this case did not occur "on the premises" and the section is inapplicable.

**3.** MCO § 259.250(4) states that "It shall be the responsibility of the licensee to provide adequate security to prevent criminal activity, loitering, lurking and disorderly conduct on the business premises, including parking areas." The conduct at issue did not occur "on the business premises" of Gabby's or in its parking area and the section is inapplicable.

taurant in Duluth, and failed to renew his license to sell liquor on his premises. *Id.* at 513, 16 N.W.2d at 781. Cerveny then sold liquor to a police officer. *Id.* Police officers executed a search warrant and seized approximately 160 cases of liquor. *Id.* Cerveny was convicted of keeping intoxicating liquor in his possession for the purpose of sale, in violation of a city ordinance. *Id.* at 512, 16 N.W.2d at 781.

The Duluth liquor ordinance under which Cerveny was convicted followed "the pattern of the state law with reference to search and seizure, except that upon a conviction under the ordinance, the seized liquor was forfeited to the city of Duluth." *Id.* at 514–15, 16 N.W.2d at 782. On appeal, Cerveny challenged the city's power to enact an ordinance providing for the forfeiture of intoxicating liquor because the city charter did not expressly authorize such an ordinance. *Id.* at 515, 16 N.W.2d at 782. In addressing this claim, the *Cerveny* court stated:

> When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to *make all such ordinances* as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors.

*Id.* at 516, 16 N.W.2d at 783 (emphasis added) (quotation omitted). In discussing "reasonable rules and restrictions," the *Cerveny* court applied specific municipal ordinances against appellant; the court was not referring to license conditions that were not authorized by municipal code or restrictions placed on appellant by the City of Duluth. Therefore, the ALJ's reliance on the "reasonable rules and restrictions" language in *Cerveny* is misplaced because *Cerveny* considered the implied authority of the city to enact ordinances and restric-

tions concerning the sale of alcohol. *Id.* The *Cerveny* court did not hold that a municipality has the implied authority to restrict licenses in the absence of express authority conferred by statute or ordinance.

In contrast to *Cerveny*, where an ordinance explicitly required the forfeiture of any seized alcohol, here the city did not act pursuant to any statutory provision, ordinance, or charter in placing conditions on appellant's previously issued liquor license. Nor has the city expressly conferred upon itself by ordinance the power to impose conditions on an already-issued license. *See* MCO § 259.250; MCC ch. 4, § 16; Minn.Stat. § 340A.415 (limiting penalties to revocation, suspension, civil monetary penalties, or a combination of those sanctions). Rather, the city has chosen to confer upon itself only the powers to grant, revoke, deny, or suspend a liquor license, and those actions must be justified by "good cause." MCO § 259.250(9) (referencing MCC ch. 4, § 16).

The city argues that its inherent authority to impose conditions on a liquor license is a "lesser" subsidiary power within its authority to grant or revoke a liquor license. But basic rules of statutory construction instruct that words and phrases are to be construed according to their plain and ordinary meaning. *Baker v. Ploetz*, 616 N.W.2d 263, 268 (Minn.2000). And in accordance with that instruction, we conclude that the words "grant," "revoke," "deny," or "suspend" contained in Minn.Stat. § 340A.415 and MCO § 259.250 cannot reasonably be construed to include the power to "condition" a license. Moreover, the city granted the license initially and for the next 21 years without conditions. The power to impose conditions on a liquor license after its issuance is substantively different than the power to grant, revoke, or suspend a license for a

specific reason. Thus we conclude that the power to impose conditions on a liquor license is not a "lesser" subsidiary power within the authority to grant or revoke a liquor license. *See* Minn.Stat. § 340A.415; MCO § 259.250 (authorizing the city to grant, revoke, or suspend a license).

We conclude that the city lacked both express statutory authority and implied authority to impose conditions on Gabby's' license because it was undisputed that the city had no basis to suspend or revoke the license. Therefore the city's decision to impose conditions on Gabby's exceeded its statutory authority.

## III.

◼ Gabby's argues that the city imposed adverse license conditions in a racially discriminatory manner in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983. Gabby's also contends that the city's imposition of license conditions was aimed directly at preventing it from playing the music of its choice, hip-hop, in violation of its free speech rights under the First Amendment. Finally, Gabby's claims that the city's decision violates the MHRA.

◼ The law does not permit an ALJ to address constitutional issues because a constitutional challenge is a controversy that requires judicial interpretation. *Nw. Airlines, Inc. v. Metro. Airports Comm'n*, 672 N.W.2d 379, 383 (Minn.App.2003), *review denied* (Minn. Feb. 25, 2005). "Certiorari is, by its nature, a review based solely upon the record." *Amdahl v. County of Fillmore*, 258 N.W.2d 869, 874 (Minn.1977). A writ of certiorari is a vehicle for the review and correction of decisions and determinations already made. *State ex. rel. Nordin v. Prob. Ct. of Hennepin County*, 200 Minn. 167, 169, 273 N.W.

636, 637 (1937) (citations omitted); *see also* 3 Eric J. Magnuson & David F. Herr, *Minn. Practice,* § 115.4 at 489 (2008) (stating "scope of review by certiorari is quite limited"). Certiorari is not a forum for trying issues of fact de novo. *Sellin v. City of Duluth*, 248 Minn. 333, 339, 80 N.W.2d 67, 71 (1956) (stating that on certiorari, a court cannot try a matter de novo); *State ex. rel. O'Connell v. Canfield*, 166 Minn. 414, 415, 208 N.W. 181, 181 (1926) (stating writ of certiorari is not a forum for trying issues of fact). Here, the constitutional and MHRA claims of Gabby's were not developed on the administrative hearing record or before the city council. The ALJ properly made no findings with respect to Gabby's' claims of racial animus by the city or constitutional violations under 42 U.S.C. § 1983. Where a party has a statutory cause of action for redress of a discrimination claim, consideration of the claim is outside the scope of certiorari review. *See Stephens v. Bd. of Regents*, 614 N.W.2d 764, 771 (Minn.App.2000) (holding because there was a statutory cause of action for the discriminatory treatment of persons filing for bankruptcy, the discrimination claim was outside the scope of certiorari review), *review denied* (Minn. Sept. 26, 2000). There is no evidence that Gabby's presented its MHRA claims to the ALJ. And the parties indicate that Gabby's has commenced a federal action for its constitutional claims. Gabby's now requests this court to address its constitutional and MHRA claims de novo.

Because neither the ALJ or the city council considered Gabby's' constitutional and MHRA claims, and because Gabby's can pursue its section 1983 claim in its federal court action, we conclude that these claims are outside the scope of our

review on this writ of certiorari. Further, because we are not in a position to determine which party is the "prevailing party" with respect to Gabby's' constitutional claims, Gabby's' request for attorney fees under 42 U.S.C. § 1988 (2006) is denied.

## DECISION

On this record, the city's imposition of conditions on Gabby's' liquor license based on the "good cause" standard in MCO § 259.250(9) violates Gabby's' due process rights. The city has no basis to suspend or revoke Gabby's' license and the good cause standard fails to provide adequate notice that the off-premises conduct of Gabby's' patrons could result in adverse license action.

Further, the city exceeded its express and implied legal authority by imposing conditions on Gabby's' previously issued liquor license because there is no statutory provision or municipal code that provides the city with the authority to condition a license when the city has no basis to suspend or revoke Gabby's' license.

Finally, because this court's review on writ of certiorari is strictly limited to the city's findings and decision, and because Gabby's additional constitutional and MHRA claims can be litigated in another forum, these claims are outside the scope of our review.

**Reversed.**