Clay MONTELLA, et al., Relators,

v.

CITY OF OTTERTAIL, Respondent.

No. C9–01–593.

Court of Appeals of Minnesota.

Sept. 18, 2001.

Jason M. Hastings, Krekelberg & Skonseng, P.L.L.P., Fergus Falls, MN, (for relators).

Terry A. Karkela, Svingen, Athens, Russell, Hagstrom, Haugrud & Karkela, P.L.L.P., Perham, MN, (for respondent).

Considered and decided by TOUSSAINT, Chief Judge, PETERSON, Judge, and HARTEN, Judge.

## OPINION

PETERSON, Judge

In this appeal from a city council's decision to deny relators' request for a liquor-license application, relators contend that the city's decision was arbitrary and capricious and not supported by evidence. We affirm.

## FACTS

In 1998, relators Clay and Stacy Montella submitted an application to respondent City of Ottertail for a conditional-use permit to operate a business within the city. The application described the business as Brewster's coffeehouse and ice cream parlor and indicated that the business would serve espresso, cappuccino, cheesecakes, desserts, and hard ice cream. The application also requested permission to display lawn ornaments and indoor and outdoor pools and to operate a showroom and offices. At a meeting on June 18, 1998, the city council orally granted the application.

The parties agree that the city cannot locate the document that states the terms of the conditional-use permit.

Early in 2001, relators contacted the city and orally requested an application for a liquor license for Brewster's. Relators later orally requested a hearing before the city council, seeking to modify their conditional-use permit to operate Brewster's as a restaurant. Before a hearing was held, relators withdrew their later request and proceeded with their original request to obtain a liquor license application for Brewster's under the existing conditional-use permit.

At a meeting on March 15, 2001, the city council addressed relators' request for a liquor-license application. The meeting minutes state:

> [Relators'] liquor license request was again brought up. Councilman Don Patrick expressed his concern that Brewsters, as it is now, does not fit the guidelines of a restaurant, as the original Conditional Use Permit was granted for an ice cream parlor and coffee house. Comments were made by Atty. Kent Madsen as to the state of Minnesota's definition of a restaurant and had copies of certain statutes pertaining to liquor licenses.

> Atty. Krekelberg said his clients, [relators], wanted to apply for a liquor license under their old Conditional Use Permit, and that the City of Ottertail should recognize this request.

The city council determined that Brewster's was not a restaurant and, therefore, could not be issued a liquor license and orally denied relators' request for a liquor-license application.

## ISSUES

1. Was the city council decision to deny relator's request for a liquor-license application unreasonable, arbitrary, capricious, or without evidence to support it?

2. Did the city council make an error of law when it determined that Brewster's is not a restaurant?

## ANALYSIS

### I.

A city council's decision may be modified or reversed if the city violated constitutional provisions, exceeded its statutory authority, made its decision based on unlawful procedure, acted arbitrarily or capriciously, made an error of law, or lacked substantial evidence in view of the entire record submitted. Our review is confined to the record before the city council at the time it made its decision. *In re License of West Side Pawn*, 587 N.W.2d 521, 523 (Minn.App.1998) (citing Minn.Stat. § 14.68–.69 (1996)). The party seeking reversal has the burden of demonstrating error. *See Nevels v. State, Dep't of Human Servs.*, 590 N.W.2d 798, 800 (Minn.App.1999) (citing Minn.Stat. § 14.69(d), (e) (1998)).

Relators argue that the city council's decision to deny them a liquor-license application was unreasonable, arbitrary, and capricious because the council (1) acted on their oral application without providing a written application form [1]; (2) pro-

---

1. Relators do not precisely describe the action of the city council that they are challenging. There is no dispute that relators orally requested an application for a liquor license, and they did not receive one because the city council determined that Brewster's is not a restaurant. Relators sometimes describe the council's action as denying them a liquor license application and at other times as denying them a liquor license. Because it is apparent that the city council ultimately decided that Brewster's does not meet the require-

ceeded with the hearing without locating their original conditional-use permit, which they contend shows that they were operating a restaurant; and (3) concluded that the business was not a restaurant without proper investigation.

Before requiring relators to complete a written application, the city council followed an informal procedure under which it determined whether Brewster's met the requirements for receiving a liquor license. Because Brewster's did not meet the licensure requirements, no written application was completed. Although the record does not indicate that relators objected to the informal procedure the city council used, relators argue that the city council should not have acted without first permitting them to complete a written application. But relators have not identified any information that would have been provided to the council in a written application that was not available to the council when it made its decision. Therefore, relators have not met their burden of demonstrating that acting on their oral application without providing a written application form was unreasonable, arbitrary, or capricious.

■ Similarly, relators have failed to demonstrate that proceeding with the hearing without locating the original conditional-use permit or determining that Brewster's was not a restaurant without conducting an investigation was unreasonable, arbitrary, or capricious. Relators' conditional-use-permit application sought permission to operate a coffee house and ice cream parlor where espresso, cappuccino, cheesecakes, desserts, and hard ice cream would be served. The record contains no evidence, and relators make no claim, either that the conditional-use per-

mit issued for Brewster's differed in any respect from the application or that the operation of Brewster's differed in any way from the authority requested in the permit application. And relators have not cited any evidence that would have been discovered if the council had conducted an investigation.

Relators have not satisfied their burden of showing that the city council erred when it denied their request for a liquor-license application without locating their conditional-use permit or conducting an investigation.

## II.

■ Statutory construction is a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). This court's objective when construing a statute is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2000).

When a statute is unambiguous, the court must give effect to the statute's plain meaning. But, when a statute is ambiguous, that is, when it is reasonably susceptible to more than one interpretation, the court must determine the probable legislative intent and construe the statute in a manner consistent with that intent. In determining legislative intent, the court may consider the need for the law, the circumstances of its enactment, the purpose of the statute, the prior law, if any, the consequences of an interpretation, the legislative history, and administrative interpretations of the law.

*Astleford Equip. Co., Inc. v. Navistar Intn'l Transp. Corp.*, 611 N.W.2d 33, 37–38

ments for obtaining a liquor license, whether the council denied relators an application or a

license does not affect our analysis.

(Minn.App.2000) (citations omitted), *rev'd in part on other grounds*, 632 N.W.2d 182 (Minn. 2001). Words in a statute are construed according to their common and approved usage. Minn.Stat. § 645.08(1) (2000).

Minn.Stat. § 340A.404, subd. 1 (2000), states:

> A city may issue an on-sale intoxicating liquor license to the following establishments located within its jurisdiction: (1) hotels; (2) restaurants; (3) bowling centers; (4) clubs or congressionally chartered veterans organizations with the approval of the commissioner, provided that the organization has been in existence for at least three years and liquor sales will only be to members and bona fide guests; (5) sports facilities located on land owned by the metropolitan sports commission; and (6) exclusive liquor stores.

■ Relators cite a dictionary[2] that defines "restaurant" as, "A business establishment where meals or refreshments may be purchased," and that defines "refreshment" as, "Something (as food or drink) that refreshes; *or plural* (1): a light meal (2): assorted light foods," and argue that Brewster's is a restaurant because refreshments are served there.

But Minn.Stat. § 340A.101, subd. 25 (2000), defines restaurant as

> an establishment, other than a hotel, under the control of a single proprietor or manager, where meals are regularly prepared on the premises and served at tables to the general public, and having a minimum seating capacity for guests as prescribed by the appropriate license issuing authority.

This definition is narrower than the definition relators cite and limits a restaurant to an establishment where meals are regularly prepared and served. The statutory definition does not include a place where only refreshments that are not meals may be purchased.

Relators have cited no evidence of legislative intent that indicates that when the legislature used the word "meals" in the definition of "restaurant," it was referring to the coffee and dessert items that are sold at Brewster's. Absent any evidence that the legislature intended "meals" to be interpreted broadly enough to apply to these items served without any other food, we conclude that preparing and serving coffee and dessert does not constitute preparing and serving a meal. We reach this conclusion because in common usage, the word meal refers to a group of food items that includes a main course, and frequently includes a beverage, dessert, and other food items. Coffee and dessert are commonly parts of a meal, but they are not commonly considered to be a meal by themselves.

Also, if we interpret "meals" to include coffee and dessert served without any other food, we see no basis for concluding that any other food item served by itself would not be a meal. The consequence of such a decision would be to change the statutory definition of restaurant from an establishment that prepares and serves meals to an establishment that prepares and serves food. Had the legislature intended to define restaurant to include an establishment that prepares and serves food of any kind, it could have done so by simply using the word food, instead of meals.

## DECISION

The Ottertail City Council did not err when it determined that because Brew-

---

**2.** We have not been able to obtain a copy of the dictionary relators cited in their brief, and we assume that the definitions they cite are accurately cited.

ster's serves only espresso, cappuccino, cheesecakes, desserts, and hard ice cream, it is not a restaurant and cannot be issued a liquor license.

**Affirmed.**