Mahmood KHAN, Relator,

v.

MINNEAPOLIS CITY COUNCIL, Respondent.

No. A10–187.

Court of Appeals of Minnesota.

Dec. 21, 2010.

David L. Shulman, Law Office of David L. Shulman PLLC, Minneapolis, MN, for relator.

Susan L. Segal, Minneapolis City Attorney, Lee C. Wolf, Assistant City Attorney, Minneapolis, MN, for respondent.

Considered and decided by
KLAPHAKE, Presiding Judge;
HALBROOKS, Judge; and HARTEN,
Judge.*

## OPINION

HALBROOKS, Judge.

Relator Mahmood Khan appeals the decision of respondent Minneapolis City Council to demolish a house that he owns. Because the city council's decision to demolish the house is unsupported by a current finding that the house constitutes a nuisance, we conclude that the decision was arbitrary. We therefore reverse and remand for proceedings consistent with this opinion.

## FACTS

Relator owns 30 to 40 properties in the Twin Cities that he rents to low-income persons. Relator purchased the two-family house that is the subject of this appeal in June 2008. In July 2007, one year before relator purchased the home, the City of Minneapolis condemned the boarded-up home. In July 2008, just after rela-

tor purchased the home, the Inspections Division of Minneapolis determined that the property met the definition of a nuisance in Minneapolis, Minn., Code of Ordinances § 249.40 (2010), and the director of inspections ordered that the house be demolished. Relator appealed.

Relator's appeal was heard by the Nuisance Condition Process Review Panel (panel) on September 25, 2008. By that time, the property had been boarded up and vacant for more than one year. The panel also considered the neighborhood-impact statements that demonstrated neighbors' concerns over the negative impact on their property values resulting from the property's deterioration. In addition, the panel noted that the projected cost to rehabilitate the property was not justified based on its estimated post-rehabilitation resale value.

The panel recommended to the Public Safety and Regulatory Services Committee (committee) that the demolition order be upheld. The committee postponed making a decision on the panel's recommendation and instead "directed [the staff] to meet with [relator] to discuss possible rehabilitation plan." [1] On December 17, 2008, the committee voted to stay demolition of the property for 30 days, pending an agreement between staff and relator on a management plan for the exterior of the property. On January 9, 2009, the city council adopted the committee's recommendation "that the Order for Demolition be stayed, and that the proper City officers be authorized to execute a Restoration Agreement with the property owner."

Relator and the city entered into a restoration agreement dated February 3,

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The terms "rehabilitation plan" and "restoration agreement" are used interchangeably throughout the record.

2009. According to this agreement, relator "agree[d] to make all repairs, improvements, and alterations necessary to bring the property into compliance with all current City of Minneapolis Code requirements." The agreement provided that if relator failed to make the required improvements by August 9, 2009, "the City shall cause the property to be razed and removed." Between February 2009 and August 2009, relator performed restoration work on the property. Although the extent and the quality of the work is a point of contention between the parties, the parties agree that some (but not all) of the required work was completed during this time frame. On September 4, 2009, the city sent relator a letter informing him that the restoration agreement "ha[d] expired."

On October 7, 2009, the committee heard a request from city staff to rescind the city council's stay of the demolition order based on the poor quality of the restoration work. City staff members asserted that relator

> has not restored the property to almost new and, in fact, has elected to install mismatched windows, used carpeting and at least two different styles of colors of siding. In addition, interior walls have been poorly finished, including badly taped sheet rock, sprayed dry wall compound to cover imperfections and poorly installed trim boards.

Relator contended that the restoration was 90 to 95% complete and requested an extension to finish the remaining work. The committee discussed the level of completeness of the project and whether there were remedies other than demolition that would force relator to complete the work in an acceptable manner. The matter was eventually forwarded to the city council without a recommendation.

The city council voted on October 16, 2009, to send the matter back to committee. The committee postponed the matter for two cycles until November 18, 2009. In the interim, a code-compliance inspection was performed at relator's property on November 3, 2009. But the results of the inspection are not in the record that this court received from the city.

At the November 18, 2009 committee hearing, a city staff member testified about the code-compliance inspection, noting that the "results confirm that there's extensive work left, which is in direct contrast to [relator]'s testimony at the October 21st hearing where he stated that 90 to 95% of the work was done." The staff member also stated that "because of the recent return of the code compliance documents, however, we would recommend that this item be continued for one more cycle so that we can meet with the owner, go over the new code compliance requirements and come back with a second recommendation on December 9th." Despite this recommendation, the committee instead voted to recommend demolition to the city council. At the city council's meeting on December 4, 2009, it voted to rescind its previous stay of the director's order for demolition and to approve the order. This appeal follows.

## ISSUE

Was the city council's decision arbitrary?

## ANALYSIS

■■■ Relator argues that the city council's decision to demolish his house should be reversed on the grounds that it was arbitrary and unsupported by the evidence and that he was not afforded adequate due process by the city council. The city council's action is quasi-judicial in nature and is therefore subject to certiorari

review by this court. *See Pierce v. Otter Tail Cnty.*, 524 N.W.2d 308, 309 (Minn. App.1994) (discussing when acts are quasi-judicial in nature), *review denied* (Minn. Feb. 3, 1995). Certiorari review is limited "to questions affecting the jurisdiction of the [decision-making body], the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge Cnty.*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted). This court's review "is confined to the record before the city council at the time it made its decision." *Montella v. City of Ottertail*, 633 N.W.2d 86, 88 (Minn.App.2001) (quotation omitted).

Relator does not dispute the city council's authority to order the demolition of his house. The city council has the authority to abate nuisances by ordering the demolition of nuisance conditions under Minnesota Statutes and the Minneapolis Code of Ordinances. *See* Minn.Stat. § 412.221, subd. 23 (2008) (granting city councils "power by ordinance to define nuisances and provide for their prevention or abatement"); Minneapolis, Minn., Code of Ordinances (MCO) § 249.40 ("Buildings determined to be a nuisance condition may be rehabilitated or razed by order of the director of inspections.").

The process for abating a nuisance begins with a determination that a nuisance condition exists. The Minneapolis Code of Ordinances defines a nuisance as the existence of at least one of four conditions. MCO § 249.30(a) (2010). If a nuisance condition exists, the director of inspections must "examine the building to ascertain whether the nuisance condition should be ordered for rehabilitation or demolition." MCO § 249.40(1). The ordinance lists several criteria that the director of inspections must consider when ordering that a building be rehabilitated or razed. *Id.* In this case, the director of inspections issued an order to demolish relator's house on July 23, 2008. While the order is not in the record that this court received from the city, neither party argues that the house was not a nuisance condition at the time of the director's order.

Relator appealed the director's order, requesting the opportunity to bring the property into code compliance. If the director's order is appealed, the appeal is heard by the Nuisance Condition Process Review Panel. MCO § 249.45(b) (2010). The panel consists of the director of operations, licenses, and environmental services; the fire marshal; the director of housing policy and development; and the city assessor or their designees. MCO § 249.45(a) (2010). The pertinent language provides:

> The panel shall determine whether the building meets the definition of nuisance condition as set forth in section 249.30 and whether the director of inspections' order to demolish or rehabilitate the building should be upheld or overturned and shall specify the factual and legal basis for the determination. The panel shall make its determination based upon the preponderance of the evidence.

MCO § 249.45(h) (2010).

After hearing testimony and receiving evidence at its September 25, 2008 meeting, the panel voted to uphold the director's order. The decision of the panel that the house met the definition of a nuisance was based on the facts that (1) "the doors, windows and other openings into the building are boarded up," (2) "the values of neighborhood properties have diminished as a result of deterioration of the subject building," and (3) "the cost of reha-

bilitation is not justified when compared to the after rehabilitation resale value."

After the panel makes its decision, the next step is that

[t]he panel shall refer its decision to the city council, which shall have the final authority to determine whether the building is a nuisance condition as set forth in section 249.30 and whether the building should be rehabilitated or razed. The panel's findings shall include the date and time of the hearing before the public safety and regulatory services committee. The public safety and regulatory services committee may hear arguments from the appellants, but shall take no further evidence.

MCO § 249.45(j) (2010). In this instance, upon referral from the panel, the committee approved a restoration agreement and forwarded the matter to the city council. The city council voted to stay the director's demolition order and authorized a proper city officer to enter into a restoration agreement with relator.

The city seems to assume that because it followed the appropriate procedure before it stayed the director's demolition order and authorized the restoration agreement, it could simply lift the stay and proceed with demolition almost one year later. We disagree. By December 2009, when the city council voted to lift the stay, it is undisputed that at least some restoration work had been performed at the property. The record before the city council in 2009 contained no evidence that any of the three original bases for declaring the house a nuisance remained. Although there was testimony before the committee about the findings of the November 3, 2009 code-compliance inspection, the code-compliance report was not presented to the committee, and the testimony did not provide the committee with any evidence that the code violations caused the house to remain a nuisance. There was no new order from the director of inspections after the restoration agreement had expired, there were no new findings from the Nuisance Condition Process Review Panel, and the city council made no finding that the condition of the house currently constituted a nuisance.

On this record, we conclude that the city's decision in December 2009 to rescind the stay of the July 2008 order for demolition was arbitrary. We therefore reverse the city council's decision and remand for findings regarding whether the house currently constitutes a nuisance.

Relator also argues that he was denied due process and that the committee was improperly influenced by extra-record evidence. Because we are reversing and remanding to the city council, we decline to address these additional arguments.

## DECISION

The Minneapolis City Council has the authority under MCO § 249.45 (2010) to abate a nuisance through demolition. But here, the city council's decision to proceed with the demolition of relator's property was based on an outdated determination that the building was a nuisance and unsupported testimony concerning code compliance. As a result, we conclude that the city's decision was arbitrary and unsupported by the record before it.

**Reversed and remanded.**