STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2142

Great Western Industrial Park, LLC,
Relator,

vs.

Randolph Township,
Respondent

**Filed September 8, 2014**
**Reversed**
**Peterson, Judge**

Randolph Township
Resolution No. 92013

Ann Evangeline Kennedy, Nilsson Brandt, P.A., Minneapolis, Minnesota (for relator)

Jessica Elizabeth Schwie, Jardine Logan & O'Brien, Lake Elmo, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Huspeni, Judge.[*]

**S Y L L A B U S**

Minn. Stat. § 366.012 (2012) does not authorize a town to impose a service charge for a governmental service provided by the town; it provides a method for collecting a service charge that a town is otherwise authorized to impose.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**PETERSON**, Judge

After respondent township denied a conditional-use-permit application submitted by an applicant with an option to buy relator's property and the applicant failed to pay the expenses incurred by the township in processing the application, the township passed a resolution under Minn. Stat. § 366.012 that certified the expenses to the county auditor as an unpaid service charge to be collected with relator's property taxes. In this certiorari appeal, relator argues that respondent misapplied Minn. Stat. § 366.012. We reverse.

## FACTS

Recovery Technology Solutions, LLC (RTS) had an option to buy land from relator Great Western Industrial Park, LLC (Great Western). RTS submitted an application to respondent Randolph Township for a conditional-use permit (CUP) to use the land as the site for a facility for recycling asphalt shingles. The township concluded that the proposed facility was inconsistent with a township ordinance that prohibited the accumulation, storage, or processing of waste or recyclable materials and denied the application.

After denying the CUP application, the township sent a letter to RTS stating, "As agreed to, [RTS] shall reimburse the Township for all out of pocket expenses incurred in the conditional application review." Expenses totaled $31,666.41, including more than $28,000 for legal and consulting fees. RTS objected to the expenses as unreasonable and asserted that it was not liable for the expenses.

2

The township apparently did not make any further effort to collect the unpaid expenses from RTS. Instead, the township wrote a letter to Great Western, which stated:

> On November 6, 2012, [RTS] filed an application with Randolph Township for a conditional use permit . . . . That application was ultimately denied by the Township. However, in processing the application, Randolph Township incurred $31,666.41 in legal, planning, engineering, publication and Town Board expenses. To date, RTS has not paid these charges.
>
> . . . This letter is intended to serve as notice that the Township will consider certifying the amount of unpaid invoices as well as any corresponding interest, late charges, recording charges and attorney's fees to the County Auditor at its next meeting pursuant to Minnesota Statutes Section § 366.012. This will result in charges of $31,666.41 plus interest at 5% per year (commencing on the date the Township adopts the certification resolution, likely to be September 17, 2013), late charges, recording charges and attorney's fees . . . which will be payable with the 2014 property taxes.

The township adopted the certification resolution on September 17, 2013. This certiorari appeal followed.

## ISSUE

Does Minn. Stat. § 366.012 authorize Randolph Township to certify the unpaid CUP-application expenses to the county auditor for collection from Great Western with its property taxes?

## ANALYSIS

Absent a right of review provided by statute or appellate rule, certiorari is the exclusive method to review a municipality's quasi-judicial decision. *Cnty. of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012). A municipality's

3

decision may be modified or reversed if the municipality made an error of law. *Montella v. City of Ottertail,* 633 N.W.2d 86, 88 (Minn. App. 2001). "The party seeking reversal has the burden of demonstrating error." *Id.*

The township argues that it was authorized under Minn. Stat. § 366.012 to certify the unpaid CUP-application expenses to the county auditor for collection from Great Western with its property taxes. Statutory interpretation presents a question of law, which we review de novo. *Halvorson v. Cnty. of Anoka*, 780 N.W.2d 385, 389 (Minn. App. 2010).

> The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. . . . When we conclude that a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law.

*Christianson v. Henke,* 831 N.W.2d 532, 536-37 (Minn. 2013) (quotations and citations omitted).

Minn. Stat. § 366.012 states:

> If a town is authorized to impose a service charge for a governmental service provided by the town, the town board may certify to the county auditor of the county in which the recipient of the services owns real property, on or before October 15 for each year, any unpaid service charges which shall then be collected together with property taxes levied against the property.

Under the plain and unambiguous language of section 366.012, a town board may certify unpaid service charges only if the town "is authorized to impose a service charge

4

for a governmental service provided by the town." Section 366.012 does not authorize a town to impose a service charge for a governmental service provided by the town; it creates a method for collecting a service charge that a town is otherwise authorized to impose.

The township argues that it is authorized to impose a service charge under Minn. Stat. § 462.353, subd. 4(a) (2012), which states:

> A municipality may prescribe fees sufficient to defray the costs incurred by it in reviewing, investigating, and administering an application for an amendment to an official control established pursuant to sections 462.351 to 462.364 [governing municipal planning and development] or an application for a permit or other approval required under an official control established pursuant to those sections. Except as provided in subdivision 4a,[1] *fees as prescribed must be by ordinance*. Fees must be fair, reasonable, and proportionate and have a nexus to the actual cost of the service for which the fee is imposed.

(emphasis added); *see also* Minn. Stat. § 462.3595, subds. 1-2 (2012) (allowing designation of conditional uses and setting forth procedure for approval of CUP applications).

The township's argument fails to recognize that Minn. Stat. § 462.353, subd. 4(a), requires that any prescribed fee "must be by ordinance." Our review of the township's zoning and fee ordinances has revealed no provision that permits the township to impose a fee on a property owner when a CUP application is denied and the CUP applicant fails to pay the costs incurred by the township in processing the application. The township relies on a section in the fee ordinance that requires that a $300 nonrefundable fee and a

---

[1] The exception in subdivision 4a does not apply to this case.

minimum $1,200 escrow payment be submitted with a CUP application. Randolph Township, Minn., Ordinance no. 2011-02, § 3 (2012). That section further states:

> Any escrow fund that is depleted in the application review must be replaced in equal amount prior to action on the application and any balance due will require full payment as a condition of any approval and receipt of payment prior to the commencement of any activity authorized in the approval.

*Id.*

Under the plain language of the ordinance, the township may collect additional escrow funds before acting on a CUP application, and, if an amount remains due, the township may require payment as a condition of approving the CUP. But, when neither of these opportunities to collect additional escrow funds is used, the ordinance does not authorize the township to impose a service charge on the owner of the property for which the CUP was sought.

Citing *Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 787-88 (Minn. App. 2011), the township argues that, under its general police power, it was authorized to certify the unpaid CUP-application expenses as a property-tax assessment under section 366.012. *Am. Bank* is not on point. It did not involve a challenge of the municipality's authority to impose a charge; it involved a special assessment for the costs of removing a nuisance, and the issue on appeal was whether the amount of the assessment was reasonable, not whether the municipality had authority to levy the special assessment. *Id*. *Am. Bank* does not support the position that a township may use its general police power to impose a service charge against a property owner when a CUP

application is denied and the CUP applicant, who is not the property owner, fails to pay the expenses incurred by the township in processing the application.

## D E C I S I O N

Because the township was not authorized to impose a service charge against Great Western for the expenses incurred by the township in processing RTS's CUP application, we reverse the certification resolution.

**Reversed.**