*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2164**

Ronald "Arjo" Adams, et al.,
Relators,

vs.

Saint Paul City Council,
Respondent.

**Filed December 14, 2015
Affirmed
Kalitowski, Judge***

St. Paul City Council
File Nos. RLH R 13-40 & RLH RR 14-16

Melvin R. Welch, Welch Law Firm, LLC, St. Paul, Minnesota (for relators)

Samuel J. Clark, St. Paul City Attorney, Virginia D. Palmer, Assistant City Attorney, St. Paul, Minnesota (for respondent)

        Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Kalitowski, Judge.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KALITOWSKI**, Judge

Relator Ronald "Arjo" Adams challenges respondent Saint Paul City Council's refusal to extend a previous order to demolish his home, arguing that (1) he did not receive due process, and (2) the council's decision was arbitrary, unreasonable, and without evidence to support it. We affirm.

## DECISION

### I.

Relator makes three related arguments about how he did not receive due process: (1) he did not receive adequate notice, (2) the council did not make a fact-specific decision, and (3) the council made an unfairly biased decision.

We review questions of whether the council violated the Due Process Clause de novo. *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 304 (Minn. App. 2007). Both the United States and Minnesota Constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amends. V, XIV, § 1; Minn. Const. art. I, § 7. "To determine whether an individual's right to procedural due process has been violated, we first determine whether a protected liberty or property interest is implicated and then determine what process is due . . . ." *Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 319 (Minn. App. 2005), *review denied* (Minn. Nov. 15, 2005).

Because relator has a protected property interest in the home the council ordered removed, the only question is whether he received adequate due process.

2

### 1. Notice

When adequacy of notice is the issue, the appellate courts must determine whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *McShane v. Comm'r of Pub. Safety*, 377 N.W.2d 479, 482-83 (Minn. App. 1985) (quotation omitted), *review denied* (Minn. Jan. 23, 1986).

Relator claims the standards he was required to meet constantly changed, making him unable to comply, and that the changing standards led the council to order the removal of his home and deny his request to delay the removal. We conclude that this claim lacks merit.

Relator's home has been part of the vacant housing program since August of 2012. The city performed the official inspection required by the vacant housing code on October 29, 2012, resulting in the generation of a code-compliance report. That report warned relator that he must fix all of the listed deficiencies before the house could be occupied again. In June of 2013, the council deemed the home to be a nuisance and again told relator that he must correct all of the deficiencies in the report. The city also warned relator that if he did not comply, the city would "begin a substantial abatement process to demolish or remove the building(s)."

The record indicates that relator met with the city's legislative hearing officer several times in the fall of 2013. The officer explained the deficiencies to relator and told him that he would need to have the home inspected to officially correct deficiencies listed on the report. No work had started by March of 2014, so the council passed a resolution

ordering the removal of the structure if relator failed to correct the code deficiencies within 180 days. The final inspection performed by the city in October of 2014 showed that he had failed to fix even 50% of the deficiencies from the report, so the city moved forward with demolition.

We reject relator's argument that a few inspections that took place before the house entered the vacant building program made him unable to comply with an "ever-shifting target." The legislative hearing officer explicitly told relator that he needed to comply with the report and that the old inspections were "water under the bridge." Moreover, relator structured his testimony based on the report during some of the hearings. And his sister, co-owner of the property, signed a bond that indicated it would be forfeited if they did not comply with the report, and created a plan to correct the deficiencies.

We conclude that the council's notice was constitutionally adequate as it consistently focused on one report and repeatedly told relator he must comply with that report.

### 2.  Particularized inquiry

Relator claims the city failed to make a particularized inquiry and "rubber stamped" the hearing officer's decision. Relator cites a Ninth Circuit case to argue that the failure to make a particularized inquiry implicates due process concerns. *NLRB v. Consol. Liberty, Inc.*, 672 F.2d 788, 790 (9th Cir. 1982). Relator fails to cite a Minnesota case adopting this rule, and we are unable to find one.

But even if we assume this is the law in Minnesota, the facts here are not at all like the facts in *Consol. Liberty*. In that case, the regional director from the National Labor Relations Board failed to forward (statutorily mandated) pertinent information from an investigation she conducted to the board. *Id.* Yet the board made a decision with the incomplete record, thereby "rubber stamping" the decision without considering all relevant evidence.

No such thing happened here. All of the evidence that the hearing officer received was forwarded to the council when it made its decisions. Further, the council allowed relator to present his arguments to them directly in person over a period of two years while trying to work with him to correct the code deficiencies.

We conclude that the council made a particularized inquiry such that it does not offend the notion of due process.

### 3. Judicial Bias

"Parties to an administrative proceeding are entitled to a decision by an unbiased decisionmaker." *Buchwald v. Univ. of Minn.*, 573 N.W.2d 723, 727 (Minn. App. 1998), *review denied* (Minn. Apr. 14, 1998). To be biased, the administrative decisionmaker must "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Byers v. Comm'r of Revenue*, 735 N.W.2d 671, 673 (Minn. 2007) (quotation omitted). "There is a presumption of administrative regularity, and the party claiming otherwise has the burden of proving a decision was reached improperly." *Buchwald*, 573 N.W.2d at 727.

Relator's claim of bias focuses on one statement by the legislative hearing officer: "I have to rely on what a building inspector tells me about what's done and what isn't done." Relator claims that the hearing officer maintained that viewpoint even through the final hearing. But the hearing officer's statement that she must have verification and not just photographs or testimony from relator or the neighbors does not implicate bias. The work was required to meet building codes, and inspections are the only way to verify that the work was done properly. We conclude that the council did not make an unconstitutionally biased decision.

## II.

Relator argues that the council's decision to deny an extension of the resolution to remove his home past the 180 days given to him was arbitrary, unreasonable, or made without evidence to support it.

The city argues that our review is limited because relator did not appeal the original resolution from March of 2014. We disagree. Relator's argument that the decision not to extend his deadline to repair the home was arbitrary and unreasonable requires a review of the work completed as well as the other arguments that relator makes as to why the home should not be removed. Relator's challenge to the decision not to extend the removal date is timely, and we will review the issue on the merits.

> A decision may be deemed arbitrary and capricious only if: (1) it relied on factors not intended by the ordinance; (2) entirely failed to consider an important aspect of the issue; (3) offered an explanation that conflicts with the evidence; or (4) it is so implausible that it could not be explained as a difference in view or the result of the city's expertise.

6

*Rostamkhani v. City of St. Paul*, 645 N.W.2d 479, 484 (Minn. App. 2002). This court's review "is confined to the record before the city council at the time it made its decision." *Montella v. City of Ottertail*, 633 N.W.2d 86, 88 (Minn. App. 2001) (quotation omitted).

The council decided not to extend the deadline and issued a correction notice that required relator to vacate his home and remove all items so that it could remove the home. Relator is challenging both the order to remove the building and the decision not to extend the time he had to repair the home.

We first consider whether the council's decision not to grant an extension relied on factors not intended by the code. If a building is determined to be a nuisance, the council has the option of allowing the property owner additional time or it can abate the nuisance immediately. Saint Paul Legislative Code § 45.11(5) (2015). Here, by the time the removal of the building was ordered, it was already deemed a nuisance. Thus, the council had the discretion to summarily deny the extension request. But the record indicates that it did not act summarily and instead provided sound reasons for its decision.

First, the council denied the extension because of evidence that there were still people living in a vacant building that had been designated a nuisance. Second, it discussed how, although it had given relator two years to make more progress, he had not finished the project despite his promises to do so. A council member said before the vote, "Unfortunately, I don't know that another three months is going to change anything." That does not contradict the ordinance, which gives the council discretion to extend or delay removal.

7

The council considered all important aspects of the issue. It allowed relator to discuss how he had repaired some of the code deficiencies despite his failure to submit finalized permits to prove the work. It allowed him the opportunity to discuss financing. The hearing officer submitted the record before her to the council, which included a lengthy discussion of the history of the case along with all of relator's arguments regarding completion of the code-deficiency list and his timeline. Nothing in the record suggests that the council failed to consider these things.

The council's decision did not conflict with the evidence, nor was it so implausible that it could not be explained as a difference in view or the result of its expertise. The process started nearly two years before the final decision not to grant another extension was made. Between the time the house entered the vacant building program and the order to abate the nuisance (August 7, 2012 to June 19, 2013), relator completed no documented work on the home. Between the order to abate and the March 2014 180-day order, relator had lined up some of the financing and posted a bond, but still failed to complete any inspected work on the home.

Relying on a letter written by relator's co-owner claiming that 50% of the work had been completed, the city did not start the proceedings again until October 1, 2014, when the police found multiple occupants in the home. The city then inspected the house and found that far less than half of the code deficiencies from the report had been corrected. The council had this evidence when it made its decision not to extend the deadline. Thus, the council's refusal to extend the deadline because relator failed to

8

comply with the report over a period of two years does not conflict with the evidence and is not implausible.

We conclude that the council's decisions were not arbitrary, unreasonable, or made without evidence to support them.

**Affirmed.**