Dr. Henry BUCHWALD, Relator,

v.

UNIVERSITY OF MINNESOTA,
Respondent.

No. C2–97–1191.

Court of Appeals of Minnesota.

Feb. 10, 1998.

Review Denied April 14, 1998.

Alan M. Anderson, C. Brent Robbins, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for relator.

Mark B. Rotenberg, Mark A. Bohnhorst, Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and PETERSON and HOLTAN,* JJ.

## OPINION

PETERSON, Judge.

By writ of certiorari, relator Dr. Henry Buchwald appeals from the decision of the University of Minnesota to deny his request for indemnification of attorney fees and costs. We affirm.

## FACTS

Buchwald, a tenured professor at the University of Minnesota, has worked at the university for 36 years. Currently, Buchwald serves as a full professor in the department of surgery, and is a member of the biomedical engineering faculty. Since 1977, Buchwald has been the principal investigator for the program on the surgical control for hyperlipidemias (POSCH), a federally funded research program.

National Institute of Health (NIH) grants totaling more than $60 million have been awarded to POSCH. Under federal law, the university is responsible for assuring that federal grant funds are used solely for authorized purposes.

In 1994, the university informed Buchwald that, as part of an internal investigation into the alleged misuse of federal grant funds within the department of surgery, it had discovered possible irregularities in the fiscal management of POSCH, and had initiated an internal investigation. At about the same time, a federal grand jury began investigating grant mismanagement at the university, and Buchwald was notified that he was a target in this investigation.

In response to the university and federal investigations, Buchwald retained independent legal counsel. On May 9, 1994, Buchwald informed the university that he had been served a subpoena by a federal grand jury, and formally requested that the university defend and indemnify him pursuant to the university board of regents policy on legal defense and indemnification of employees (indemnification policy). In an October 28, 1994, letter, Nils Hasselmo, university president, informed Buchwald's counsel that, pending the conclusion of the university's investigation, he had determined that Buchwald was eligible for advancement of reasonable attorney fees and costs under the indemnification policy.

The university advanced attorney fees and costs to Buchwald. On January 18, 1995, the university notified Buchwald that any billing in excess of $275,000 would not be considered reasonably incurred fees or expenses under the indemnification policy, and that his attorneys were not authorized to exceed this amount without express prior approval. On March 20, 1995, the university sent an advance of $65,788.97 to Buchwald's attorneys, which brought total payments from the uni-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

versity to $275,000. Also on March 20, 1995, the university informed Buchwald's attorneys that Hasselmo had decided to advance no more than $275,000 toward payment of Buchwald's attorney fees and costs, and that unless Buchwald submitted a new request for indemnification, the university would not make a determination concerning Buchwald's eligibility for indemnification until the completion of the federal criminal investigation, or any trial or guilty plea resulting from the investigation.

On May 12, 1995, the university charged Buchwald with willful and wanton neglect. Buchwald was informed that these charges would become part of his permanent personnel record, and that he would be required to step down as the principal investigator of the POSCH program. Buchwald filed a complaint under the university regulations concerning faculty tenure (tenure code), requesting an evidentiary hearing on the allegations that led to this discipline. The university senate judicial committee conducted formal hearings in accordance with the tenure code. The committee concluded that Buchwald did not breach his duty to oversee the POSCH grant, or cause damage to the university through negligence. The committee recommended that Hasselmo set aside the requirement that Buchwald step down as principal investigator for the POSCH grant, and order the withdrawal of the letter of reprimand from Buchwald's file.

Hasselmo recused himself from making a determination regarding the committee recommendation and appointed Elton A. Kuderer, a former chair of the Board of Regents, as his designee. Initially, Kuderer reversed the recommendation of the senate judicial committee, and instructed the dean of the medical school to impose the discipline. But the university ultimately decided to (1) name a new principal investigator for the POSCH program; (2) drop all disciplinary actions against Buchwald; (3) not place a letter of reprimand in Buchwald's personnel file; and (4) remove all prior material regarding the disciplinary action from Buchwald's personnel file.

On March 31, 1997, Buchwald formally requested indemnification for an additional $377,197 beyond the $275,000 that had been advanced. In response to Buchwald's request for indemnification, the university asked that he provide complete itemized time records for all work performed on his behalf in connection with the federal investigation, the internal university proceedings, and any other matter for which fees were requested. The university also asked Buchwald to provide citation to any legal authority that supported indemnification with respect to an internal university disciplinary proceeding. Buchwald responded that he would produce the requested information only if the university first agreed to indemnify him.

On June 3, 1997, Hasselmo issued his decision that no further payments of attorney fees or costs incurred by Buchwald would be made in relation to the federal or university investigations. Hasselmo concluded that Buchwald: (1) had received well over half a million dollars from the university and from his surgery department to help pay his legal needs;[1] (2) failed to comply with the university's request for fee information, and therefore made it impossible to determine what fees were compensable; and (3) failed to justify his argument that the university was required to compensate him for internal disciplinary actions.

## ISSUES

1. Did the university act arbitrarily by determining that Buchwald is not eligible for indemnification?

2. Is the determination that Buchwald is not eligible for indemnification the result of bias?

## ANALYSIS

■ Review by certiorari is limited to an inspection of the record of the administrative body in which the court

---

**1.** Buchwald received $250,000 from Department of Surgery Associates to pay legal fees. Department of Surgery Associates is a private organiza-

tion. The $250,000 it paid to Buchwald were not university funds.

"is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (quoting *State ex rel. Ging v. Board of Educ.,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942), *overruled on other grounds by Foesch v. Independent Sch. Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974)).

## I.

 An indemnity agreement is a contract, which is to be construed according to the principles generally applied in the construction or interpretation of other contracts. *Koppers Co. v. Missouri Pac. R.R. Co.,* 34 Ark.App. 273, 809 S.W.2d 830, 832 (1991); *Oddo v. Speedway Scaffold Co.,* 233 Neb. 1, 443 N.W.2d 596, 602 (1989); *see also Kemira, Inc. v. A–C Compressor Corp.,* 755 F.Supp. 1059, 1060 (S.D.Ga.1991) (action for indemnification calls for interpretation of contract language). The objective of judicial construction of contracts is to allow the intent of the parties to prevail. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979). Unambiguous contract language must be construed according to its plain and ordinary meaning. *Bob Useldinger & Sons, Inc. v. Hangsleben,* 505 N.W.2d 323, 328 (Minn. 1993).

The indemnification policy states, in pertinent part:

**Subd. 1. Protection Described.** Subject to subdivisions 2–4, **the regents of the University of Minnesota shall** defend, save harmless and **indemnify any employee of the University** against any threatened, pending or completed action, suit or proceeding, direct or indirect, whether civil, criminal, administrative, derivative or investigative, whether groundless or otherwise, wherever brought, arising out of an alleged act or omission occurring during the period of employment if the employee was acting within the scope of the employment or official capacity, **against expenses, attorneys' fees,** judgments, fines, penalties, punitive damages and amounts paid in settlement, **actually and reasonably incurred.**

\* \* \* \*

**Subd. 3. Eligibility Criteria; Certain Conduct Not Protected.** To be eligible under this policy an employee must have acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the regents of the University of Minnesota, and, with respect to any criminal action or proceeding, the employee must have had no reasonable cause to believe the conduct was unlawful. \* \* \* There shall also be no duty to defend or indemnify an employee with respect to an action brought by the regents or their authorized representatives. \* \* \*

**Subd. 4. Determination of Eligibility. The determination of the eligibility of an employee to the protection described above shall be made by the president of the University after appropriate investigation.** A determination of eligibility may include limitations or exceptions. The president shall make this determination in writing and provide a copy to the individual.

(Emphasis added in text.)

 Buchwald contends that the university acted arbitrarily when it failed to determine whether he is eligible for indemnification.[2] Buchwald argues that because the indemnification policy requires that the "determination of the eligibility of an employee to the protection described above shall be made by the president," the president must make a general determination of eligibility

---

**2.** Whether the university must determine Buchwald's eligibility for indemnification with regard to the $275,000 that the university has paid to Buchwald, but has characterized as an advance, is not an issue properly before us. Buchwald's 1997 request for indemnification was for expenses and fees over and above the $275,-000 he had received from the university, and the decision from which Buchwald appeals does not determine whether Buchwald is eligible to receive the $275,00 that the university claims it advanced without determining whether Buchwald is eligible.

without regard to specific expenses for which indemnification is sought. We disagree.

The indemnification policy applies to expenses and attorney fees actually and reasonably incurred by an employee. Determining whether an employee is eligible for indemnification, therefore, requires the president to determine whether the employee actually and reasonably incurred expenses or fees. The indemnification policy expressly provides that the president's determination shall be made "after appropriate investigation." An appropriate investigation includes gathering information regarding claimed expenses and fees to determine whether the expenses and fees were actually incurred and whether they were reasonably incurred for a purpose that is eligible for indemnification.

During its investigation of Buchwald's request for indemnification, the university requested information regarding the expenses and fees for which indemnification was claimed. When Buchwald refused to provide this information, the president determined that Buchwald was not eligible for indemnification. We see nothing in the indemnification policy that required the president to make a determination regarding the hypothetical question whether Buchwald would be eligible for indemnification if he produced the requested information.

Because Buchwald failed to provide information that was requested as part of an appropriate investigation, the president's determination that Buchwald was not eligible for indemnification was not arbitrary. *See Markwardt v. State, Water Resources Bd.,* 254 N.W.2d 371, 374 (Minn.1977) (decision is arbitrary and capricious when it represents an agency's will and not its judgment); *Ganguli v. University of Minn.,* 512 N.W.2d 918, 923 (Minn.App.1994) (university's decision may be arbitrary if it violates its own procedures).

Buchwald argues further that the determination that he is not eligible for indemnification because he failed to provide the requested information is arbitrary because more than three years earlier, he had submitted to the university time records for legal bills exceeding $300,000. This argument, however, ignores the fact that without documentation explaining the $377,197 in expenses and fees for which Buchwald sought indemnification in 1997, the university had no basis for determining that the fees reflected in the records submitted earlier were among the fees for which indemnification was sought.

Because we conclude that Hasselmo's determination that Buchwald was not eligible for indemnification because he failed to provide itemized time records and specific documentation concerning all fees and expenses for which indemnification was requested was not arbitrary, we decline to address the other reasons Hasselmo gave for the determination.

## II.

■ Buchwald argues that Hasselmo's decision that the university would make no further payments of attorney fees or costs should be reversed because Hasselmo failed to recuse himself from determining Buchwald's eligibility for indemnification, despite his admitted bias.

■ Parties to an administrative proceeding are entitled to a decision by an unbiased decisionmaker. *See Urban Council on Mobility v. Minnesota Dep't of Natural Resources,* 289 N.W.2d 729, 736 (Minn.1980) (due process not violated so long as decisionmaker remains unbiased). There is a presumption of administrative regularity, and the party claiming otherwise has the burden of proving a decision was reached improperly. *See No Power Line, Inc. v. Minnesota Envtl. Quality Council,* 262 N.W.2d 312, 325 (Minn.1977) (although judiciary has responsibility of ensuring administrative agencies comply with legislative mandates, presumption of administrative regularity exists).

The record indicates that Hasselmo (1) issued a report that concluded that federal funds had been diverted from the POSCH program while Buchwald was the principal investigator, but did not state any conclusion as to whether Buchwald was responsible for diverting funds; and (2) recused himself from making a determination on Buchwald's disciplinary matter, in order to avoid any question of impartiality.

In recusing himself, Hasselmo did not admit to having any bias against Buchwald, and more importantly, Buchwald has not cited any evidence that indicates Hasselmo was

biased against Buchwald. Furthermore, none of the three reasons Hasselmo gave for denying Buchwald's request for indemnification involved any examination of the facts underlying the university disciplinary proceeding against Buchwald. Under these circumstances, we conclude that the fact that Hasselmo recused himself in the disciplinary proceeding does not, by itself, demonstrate that Hasselmo was biased against Buchwald, and Buchwald has failed to demonstrate that Hasselmo was biased. *See Federal Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 701, 68 S.Ct. 793, 803, 92 L.Ed. 1010 (1948) (fact that commission had entertained certain views as result of prior investigations did not necessarily mean minds of members were irrevocably closed on subject)

### DECISION

The determination that Buchwald was not eligible for indemnification because he failed to provide itemized time records and specific documentation concerning all fees and expenses for which he requested indemnification was not arbitrary. Buchwald did not demonstrate that Hasselmo was biased against him.

**Affirmed.**