Roland C. AMUNDSON, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A05–1245.

Court of Appeals of Minnesota.

May 23, 2006.

716

Ronald I. Meshbesher, Meshbesher & Spence, Ltd., Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin

County Attorney, Donna J. Wolfson, Patrick Diamond, Assistant County Attorneys, Minneapolis, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; DIETZEN, Judge; and COLLINS, Judge.*

## OPINION

DIETZEN, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing that the 2002 appointment of the Honorable H. Richard Hopper, formerly a district court judge, by the chief justice of the Minnesota Supreme Court to preside over criminal charges against appellant was unconstitutional because Judge Hopper was not a "retired judge" within the meaning of article VI, section 10 of the Minnesota Constitution and the applicable statutes. Because Judge Hopper was a "retired judge" under the Minnesota Constitution, we affirm.

## FACTS

Appellant Roland C. Amundson served as a judge on the Minnesota Court of Appeals from 1991 until 2002. Before being appointed to the Minnesota Court of Appeals in 1991, appellant served as personal representative and executor of an estate. The Amy Day Trust, which was a beneficiary of the estate, was created to provide for a mentally handicapped woman. In 1994, after six years of probate proceedings, the estate was settled, the trust received its distributive share, and appellant assumed control of the trust. Ordinarily, judges are precluded from serving as fiduciaries for non-family members, but appellant obtained a waiver from the Minnesota Board of Judicial Standards to serve as trustee. See Minn.Code Jud. Conduct Canon 4E(1).

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Appellant embezzled more than $300,000 from the trust for his own use. When appellant's actions were discovered in 2002, he resigned as a judge of the court of appeals and was disbarred. He was then charged in Hennepin County with five counts of theft by swindle. The chief justice of the Minnesota Supreme Court appointed the Honorable H. Richard Hopper, who formerly served as a judge of the district court, to preside over all matters relating to the Amy Day Trust. The appointment order identified Judge Hopper as a "Retired Judge of the District Court of the First Judicial District of the State of Minnesota" and it indicated that the appointment was made pursuant to Minn. Stat. § 2.724, subd. 3(a), which authorizes the chief justice to assign any retired judge to serve "as a judge of any court except the Supreme Court."

Judge Hopper was appointed to the district court in 1989. In 1990, he was elected to the seat and served in that position until 1996. In February 1996, Judge Hopper, who was then 48 years old, requested that the governor accept his "resignation" from the bench. The governor accepted Judge Hopper's resignation and ordered that Judge Hopper's "retirement" become effective on June 1, 1996. The director of judicial appointments informed the state court administrator of the upcoming judicial vacancy, indicating that the governor had "granted retirement" to Judge Hopper. The governor accepted Judge Hopper's "resignation" and recognized that the judge's "decision to resign from the bench could not have been an easy one."

Judge Hopper was assigned, without objection, to appellant's case in 2002. Following appellant's guilty plea to five counts of theft by swindle, Judge Hopper ordered that appellant receive upward sentencing departures on all five counts based on aggravating factors (vulnerability of the victim, abuse of a position of trust, and major economic offense). The concurrent sentences totaled 69 months. Appellant did not file a direct appeal from the convictions or sentences.

In December 2004, nearly two-and-one-half years after his conviction and sentencing, appellant filed a postconviction petition, arguing that the appointment of Judge Hopper violated the Minnesota Constitution and applicable statutes. The postconviction petition was considered by a sitting district court judge who had not previously heard any aspect of the case. That judge denied relief, concluding that the assignment did not violate the state constitution. This appeal follows.

## ISSUES

I. Is this appeal time-barred?

II. Is appellant's claim moot?

III. Did the district court err by concluding that Judge Hopper was a "retired judge" eligible for assignment by the chief justice to act as a judge of the district court?

IV. Does the de facto judge doctrine apply?

## ANALYSIS

### I.

■ As a threshold matter, respondent contends that this court should dismiss appellant's appeal as an untimely collateral attack on his conviction because his petition for postconviction relief was filed two-and-a-half years after his initial sentence. We disagree.

Minn.Stat. § 590.01, subd. 4(a) (Supp. 2005), provides: "No petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate

court's disposition of petitioner's direct appeal." This time limit became effective on August 1, 2005. 2005 Minn. Laws c. 136, art. 14, § 13 (providing "[a]ny person whose conviction became final before August 1, 2005, shall have two years after the effective date of this act to file a petition for postconviction relief.").

Respondent concedes that this statute does not apply retroactively to appellant and that this court is not statutorily precluded from considering appellant's appeal. Respondent nonetheless argues that we should dismiss this appeal based on *State v. Harris,* 667 N.W.2d 911 (Minn.2003), and *State v. DeShay,* 669 N.W.2d 878 (Minn.2003).

In *Harris,* the defendant was convicted after a trial over which a judicial officer[1] appointed by the chief judge of the district court presided. 667 N.W.2d at 913–14. On direct appeal to the Minnesota Supreme Court, the defendant argued for the first time that the judicial officer lacked jurisdiction to hear the case. *Id.* The supreme court, despite the defendant's failure to raise the issue in the trial court, analyzed the merits of respondent's jurisdictional argument, stating: "Although we look with disfavor upon Harris's delay in raising the issue of the judicial officer's lack of authority until after his conviction, we nonetheless believe that it would be unjust not to consider his claim on direct appeal." *Id.* at 921.

Respondent argues that this court should view appellant's lack of timeliness in raising the jurisdictional issue "with disfavor" and, accordingly, dismiss appellant's claim. Like the *Harris* court, however, we conclude that, despite the lack of timeliness, it would be unjust to not consider appellant's jurisdictional claim. It is immaterial that the defendant in Harris raised the issue on direct appeal while appellant raised it in a postconviction petition two-and-one-half years after his conviction.

Respondent next argues that we should dismiss this appeal as untimely based on *DeShay.* But respondent has failed to establish how *DeShay* supports its claim that the appeal was untimely. In *DeShay,* the appellant was convicted after a jury trial presided over by a judicial officer. *DeShay,* 669 N.W.2d at 883–84. During the pendency of his appeal, but after the submission of briefs and oral arguments, the supreme court filed its *Harris* opinion. *Id.* at 884 n. 5 (citing *Harris,* 667 N.W.2d 911). DeShay moved to reopen the appeal to allow for additional briefing and oral argument in light of *Harris,* and the state opposed the motion, arguing that it was untimely. The supreme court decided the case, but reserved the *Harris* issue, stating that it could be raised in a postconviction proceeding. *Id.*

Because we conclude that it is in the interests of justice to consider appellant's jurisdictional challenge and respondent has provided no legal authority requiring dismissal of appellant's jurisdictional claim as untimely, we decline to dismiss the claim.

## II.

Respondent next contends that appellant's claim should be dismissed as moot and that any opinion would be merely advisory. Respondent argues that appellant seeks what he already has, i.e., a guilty plea and sentence, and that any opinion by this court would, therefore, be advisory. Respondent points to appellant's plea for relief, which asks this court to "grant [ ]

---

1. Judicial officers were lawyers appointed by the chief judge of a judicial district and served at the pleasure of the county court. *Harris,* 667 N.W.2d at 914. They heard and tried such matters as assigned to them by a county court judge. *Id.*

appellant's petition for postconviction relief, and remand this case to the district court, with directions, to vacate his conviction and sentence, and allow [ ] appellant to reenter a plea of guilty and be resentenced by a duly appointed qualified district court judge."

 The determination of whether a cause of action is moot presents a question of law. *Isaacs v. Am. Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn.App.2004), *review denied* (Minn. Apr. 19, 2005). An issue is deemed to be moot and results in dismissal of an appeal if the court is unable to grant effectual relief. *In re Schmidt*, 443 N.W.2d 824, 826 (Minn.1989). A court may not issue advisory opinions or decide cases merely to establish precedent. *Id.*

Here, appellant asserts that the judge who imposed upward sentencing departures on three charges was improperly assigned to .hear this case. Because another judge may impose a different sentence, we cannot say that this court is unable to grant appellant effectual relief. We therefore conclude that the appeal is not moot and that we retain jurisdiction over appellant's constitutional claim.

### III.

 Appellant argues that the assignment of Judge Hopper violated the Minnesota Constitution because Judge Hopper was not a "retired judge" within the meaning of article VI, section 10 of the Minnesota Constitution and applicable statutes. We disagree.

 A petition for postconviction relief is a collateral attack on a judgment that carries a presumption of regularity and, therefore, cannot be lightly set aside. *Pederson v. State*, 649 N.W.2d 161, 163 (Minn.2002). This court will not disturb the decision of a postconviction court absent an abuse of discretion. *Dukes v.*

*State*, 621 N.W.2d 246, 251 (Minn.2001). Here, the denial of postconviction relief is based on the district court's determination of the issues of law raised by appellant and its construction of applicable constitutional provisions and statutes, both of which we review de novo. *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 283 (Minn.2004) (constitutional interpretation); *Brookfield Trade Ctr. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998) (statutory construction).

Article VI, section 10 of the Minnesota Constitution states: "As provided by law a retired judge may be assigned to hear and decide any cause over which the court to which he is assigned has jurisdiction." The constitution also provides that "[t]he legislature may provide by law for retirement of all judges and for the extension of the term of any judge. . . ." Minn. Const. art. VI, § 9. We turn to Minnesota statutes to determine when a judge qualifies as "retired" "as provided by law" for appointment purposes.

The Minnesota legislature has adopted several laws concerning the appointment of retired judges to hear cases. Minn. Stat. § 484.61 (2004) provides the chief justice with the authority to appoint retired district court judges:

> Upon the retirement of any judge of the district court under the provisions of chapter 490, . the retired judge may be appointed and assigned to hear any cause properly assignable to a judge of the district court and act thereon with full powers of· a judge of the district court pursuant to section 2.724 with the retired judge's consent.

Minn.Stat. § 2.724, subd. 3(b) (2004), provides:

> A judge who has been elected to office and who has retired as a judge in good standing and is not practicing law may also be appointed to serve as judge of

any court except the Supreme Court. A retired judge acting under this paragraph will receive pay and expenses in the amount established by the Supreme Court.

### Retired Judge

Relying on the legislative history of section 2.724, subd. 3(b), appellant first argues that Judge Hopper does not qualify as a "retired judge" under section 484.61 or 2.724 because he resigned from his office. Minn.Stat. § 2.724, subd. 3, states that a retired judge is a person "who has retired as a judge in good standing[.]" [2] The parties agree that when the bill proposing the amendment of section 2.724 was introduced, section 3(b) authorized the appointment of judges who had "resigned." The word "resigned" was changed to "retired" when the bill was passed into law. Based on the substitution of the words, appellant argues that the legislature intended to preclude the appointment of judges who resigned from their offices. Respondent, on the other hand, argues that the substitution of words is meaningless because the words "resigned" and "retired" are not contradictory or mutually exclusive.

The relevant statutes do not define the word "retired." Accordingly, the word must be construed according to its ordinary meaning. Minn.Stat. § 645.08(1) (2004); Conaway v. St. Louis County, 702 N.W.2d 779, 783 (Minn.App.2005) (stating that courts should "give words their ordinary meaning unless the legislature has specifically provided otherwise" or unless "the ordinary meaning" "would be inconsistent with legislative intent."). The common and ordinary meaning of the word "retired" includes a person who has

"[w]ithdrawn from one's occupation, business, or office; having finished one's active working life." The American Heritage Dictionary 1488 (4th ed.2000). Judge Hopper withdrew from his office as a district court judge. He was therefore "retired" within the ordinary meaning of the word "retired." Consequently, we conclude that Judge Hopper "retired" within the meaning of Minn.Stat. § 2.724. Because the word "retired" is not ambiguous, we need not resort to legislative history to interpret its meaning.

Appellant next argues that Judge Hopper is not "retired" within the meaning of section 484.61 because he did not retire "under the provisions of chapter 490." The crux of appellant's argument is that a judge cannot qualify as "retired judge" unless that person is actually receiving annuity benefits. Appellant suggests that until annuity benefits are being paid out to the retired judge, there is no retirement under the provisions of chapter 490.

In 1973, the legislature adopted the Uniform Retirement and Survivors' Annuities for Judges Act (the Act). See Minn.Stat. §§ 490.021–133 (2004). Chapter 490 sets forth, inter alia, the eligibility requirements for retirement benefits for a judge who elects to retire under the provisions of the statute. Under the Act, one can retire on certain retirement dates, which are "normal" (age 65), "early" (age 60), and "mandatory" (age 70) retirement. Minn. Stat. § 490.121, subds. 8, 10, 12 (2004). But the Act does not determine when a judge becomes a "retired judge" for assignment purposes. See Minn.Stat. § 490.021–133; see also Saetre v. State, 398 N.W.2d 538, 541 (Minn.1986) (discussing chapter 490 in reference to mandatory

---

**2.** Appellant does not challenge the other requirements of the statute, i.e., that Judge Hopper was a judge "elected to office" and

"is not practicing law." Consequently, we do not address those requirements.

retirement of judges). The Act provides that after completion of a minimum of five years of service as a judge, a judge is entitled to receive annuity benefits. Minn. Stat. § 490.124, subd. 2 (2004). But payment of those benefits can be deferred until early retirement, even if a judge terminates his or her service before reaching the age of a retirement date. *Id.*, subd. 5(a) (2004) ("Any benefit to which a judge is entitled under this section may be deferred until early or normal retirement date, notwithstanding termination of such judge's service prior thereto."). The legislature thus recognized that the "termination" of a judge's service on the bench is distinct from the date on which a judge opts to begin receiving benefits.

Based on our reading of Minn.Stat. § 484.61, we conclude that the statutory requirement of a retirement "under the provisions of chapter 490" is satisfied by a judge who has served as a judge for a minimum of five years and is qualified to receive retirement benefits at the early or normal retirement date. Here, Judge Hopper served on the bench for a minimum of five years and was entitled to a retirement annuity at his "normal or early retirement date." Minn.Stat. § 490.124, subd. 2. Therefore, Judge Hopper met the requirement of a "retired judge" under Minn.Stat. § 484.61.

Two reasons support our conclusion. First, we discern no legislative intent in chapter 490 that to qualify as a retired judge one must be actually receiving annuity benefits. Clearly, if the legislature intended to place such a restriction on the appointment of a retired judge, it could have done so.

Second, we conclude that the legislature intended, through various options set forth in chapter 490, to permit judges who have terminated their active service to elect between a variety of retirement dates on which to begin receiving benefits, without making any attempt to limit their eligibility for appointment by the chief justice as retired judges. *See* Minn.Stat. § 645.16 (2004) (stating that "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.").

### Minnesota Retirement System

Appellant further argues that the Minnesota State Retirement System (MSRS) defines "retired judge." Minn. Stat. § 352.01, subds. 19, 20 (2004). But this statutory definition does not define "retired judge" for the purposes of article VI, section 10 of the Minnesota Constitution. The MSRS defines "retired employee" as a person who is entitled to receive an accrued annuity and "retirement" as the time after an accrued annuity becomes payable. *Id.* Like chapter 490, the MSRS statute recognizes that a state employee's service may terminate long before the employee elects to receive or is entitled to receive annuity payments, in which event a covered employee with the requisite years of service may be entitled to a deferred retirement annuity. Minn.Stat. § 352.22, subd. 3. The statute focuses on the "time after" the payment of annuities begins. But the MSRS statute makes no attempt to determine whether one who has left state employment and has deferred the receipt of benefits would be considered "retired." Thus, the MSRS statute does not answer the question of who is a "retired judge" under article VI, section 10 of the Minnesota Constitution.

### Resignation of a Judge

Finally, appellant argues that the governor's use of the word "resignation" in his letter to Judge Hopper precludes any characterization of Judge Hopper as a "retired judge" eligible for appointment by the chief justice. But appellant acknowledges that the governor also directed the

"retirement" of Judge Hopper under chapter 490. We conclude that the terms "resign" and "retire" are not contradictory or mutually exclusive. Resignation is a means of withdrawing from a position or line of work, and thereby accomplishing retirement. Judge Hopper's termination of service qualified him as retired under chapter 490. The governor's use of the term "resignation" does not compel a contrary legal conclusion.

## IV.

■ Respondent argues that even if Judge Hopper's assignment violated the Minnesota Constitution, the appointment is lawful under the de facto judge doctrine. A "de facto judge" is a judge who operates under color of law but whose authority is procedurally defective. *Harris*, 667 N.W.2d at 920 n. 5 (quotation omitted). The supreme court explained:

> Typically, we have applied the de facto judge doctrine when there is a technical defect in the judge's statutory authority. For example, we have found a judge to have de facto authority where he signed findings in a case just after his successor had taken the oath of office, ... and we have upheld the de facto authority of a justice of the peace where he filed his bond and oath with the village clerk of the county seat, rather than with the clerk of court[.]

*Id.* (citations omitted). Because we conclude that Judge Hopper was a retired judge, that his appointment did not violate the Minnesota Constitution, and that there was no defect in his authority to preside over the matter involving appellant, we need not decide this issue.

## DECISION

Because Judge Hopper, who terminated his active service and qualified for a retirement annuity as a district court judge after more than five years of service, was a "retired judge" eligible for appointment by the chief justice "as provided by law," his appointment did not violate article VI, section 10 of the Minnesota Constitution, and the district court did not abuse its discretion by denying appellant's postconviction petition.

**Affirmed.**