# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1654
_____

Mahmood Khan

*Plaintiff - Appellant*

v.

City of Minneapolis, a municipal corporation; Does 1-10

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: March 12, 2019
Filed: April 30, 2019
_____

Before SHEPHERD, ARNOLD, and KOBES, Circuit Judges.
_____

ARNOLD, Circuit Judge.

Landlord Mahmood Khan sued the City of Minneapolis, Minnesota, after it revoked his rental-dwelling licenses. The district court[1] granted the city judgment on

_____

[1]The Honorable Patrick A. Schiltz, United States District Judge for the District of Minnesota.

the pleadings—a determination that Khan appeals and that we review de novo. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1109 (8th Cir. 2017). We affirm.

Because we are reviewing the grant of judgment on the pleadings, we accept as true the facts as alleged in the complaint and grant Khan all reasonable inferences from those facts. *See id.* Khan had 43 rental-dwelling licenses that permitted him to rent homes to about 350 people. All but two of Khan's tenants were protected class members under the Fair Housing Act, a federal law that generally prohibits making unavailable or denying a dwelling because of a person's "race, color, religion, sex, familial status, or national origin." *See* 42 U.S.C. § 3604(a).

Because of housing-code violations, the city revoked one of Khan's licenses in 2010 and another in 2014; each time, Khan appealed the revocation of his licenses to the Minnesota Court of Appeals, and each time that court upheld the revocation. *See In re Khan*, 804 N.W.2d 132 (Minn. Ct. App. 2011); *Khan v. Minneapolis City Council*, No. A14–0455, 2014 WL 7237193 (Minn. Ct. App. Dec. 22, 2014). The city then revoked Khan's remaining licenses under a Minneapolis ordinance that prohibits a person from holding a rental-dwelling license for five years if the city has revoked two or more licenses from that person. *See* Minneapolis, Minn., Code of Ordinances § 244.1910(a)(13)(a). Khan again appealed but to no avail. *See Matter of Khan*, No. A16–0633, 2017 WL 1376379 (Minn. Ct. App. Mar. 20, 2017).

Khan then brought his cause to federal court, asserting various claims against the city for revoking the licenses. Khan has since abandoned all his claims except a disparate-impact claim under the FHA, a claim that challenges practices having a disproportionately adverse effect on minorities without a justifiable rationale. *See Ellis*, 860 F.3d at 1110. The Supreme Court has explicitly recognized these kinds of claims, but it has cautioned that they are "properly limited" to the removal of "artificial, arbitrary, and unnecessary barriers, not the displacement of valid governmental policies." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys.*

*Project, Inc.*, 135 S. Ct. 2507, 2522 (2015). It explained, moreover, that the FHA "is not an instrument to force housing authorities to reorder their priorities" or to prevent them "from achieving legitimate objectives, such as ensuring compliance with health and safety codes." *Id.* at 2522, 2524. So courts must "examine with care," and promptly decide, whether plaintiffs have made out a prima facie disparate-impact case. *Id.* at 2523.

After the Court established the ground rules for FHA disparate-impact claims, two Minneapolis landlords who rented primarily to members of protected classes brought such a claim against the city, alleging that its "heightened enforcement of housing and rental standards has a disparate impact on the availability of housing for individuals protected under the" FHA. *See Ellis*, 860 F.3d at 1107. The landlords alleged that the city's overzealous enforcement of its housing code, its policy of discouraging for-profit rental housing, and its revocation of rental licenses had displaced several protected class members from their homes. We affirmed the district court's grant of judgment on the pleadings for the city, concluding that the landlords had failed to point to an artificial, arbitrary, and unnecessary policy that an FHA disparate-impact claim could remedy. *See id.* at 1109, 1114.

We see no reason why *Ellis* does not control this case. Khan tries to escape *Ellis*'s grip by arguing that "an honest, fair assessment" of his entire complaint would show that, though "a couple paragraphs" of the complaint declared that Khan "had been picked on," "complaints and claims regarding code enforcement were nowhere to be found" in the complaint. We have given Khan's complaint the honest, fair assessment he invites, and though the allegations are somewhat discursive, we are, despite his protestations, left with the inescapable conclusion that his claim is indeed about the city's alleged hyper-enforcement of its housing code against for-profit landlords, which is essentially the same allegation that this court considered and rejected in *Ellis*.

The complaint's opening paragraph states that the city over the past decade "ha[d] subjected Plaintiff to a jaw-dropping onslaught of fines, fees, penalties, hearings, condemnations, demolitions, and landlord license revocations, despite the fact that all of his properties have passed inspection." Later in his introduction Khan asserts that the city had tried to pin blame for its urban blight on landlords like Khan and that "[t]he years of fines, fees, penalties, hearings, condemnations, demolitions, and rental dwelling license revocations constitute a custom, practice, policy, or pattern of discrimination against racial minorities and other 'protected class' members." Such allegations about housing-code enforcement and penalties don't appear in the introduction alone; they are ubiquitous. *See also, e.g.*, Khan's Compl. at ¶¶ 52, 62, 65, 66,, 67, 77, 82, 83, 90, 91, 92, 93, 98, 103, 104, 111, 112, 113, 114, 115, 116, 123, 124, 126, 134, 135, 140, 149. Though Khan takes a slightly different tack when challenging specific code violations, arguing essentially that the violations were out of his control, whereas the plaintiffs in *Ellis* challenged in some instances whether code violations had occurred at all, the overriding theme of both cases is the city's alleged policy of discouraging for-profit housing rentals at the expense of protected class members and landlords who rent to them.

Khan also maintains that his case is different from *Ellis* because, unlike the landlords there, he alleges that the city required him "to refuse housing to persons who have criminal records." He makes no further allegations about that requirement in his complaint. But without his having alleged more, we cannot say Khan has raised a plausible claim that such a requirement had a disparate impact on protected class members. For instance, he does not allege that he actually heeded the city's directive or that, if he had, he wouldn't have rented to other members of the protected class who did not have a criminal record. In addition, we have reviewed the document that Khan submits as reflecting the city's directive that he complains about, which we may do at this stage because Khan's complaint necessarily embraces it, *see Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and we see nothing in it that directs Khan not to rent to people with criminal records. The city merely asked

-4-

if Khan conducted background checks on prospective tenants and asked about the criteria Khan used when accepting tenants with criminal histories, including whether certain convictions precluded the tenant from renting with Khan. These questions fall well short of establishing that the city instructed Khan not to rent to people with criminal records.

Most important, Khan's allegation does not even begin to describe a city policy. *See Ellis*, 860 F.3d at 1111. Khan admits as much, conceding "that ordering just one landlord to deny housing to persons with criminal histories or unlawful detainers does not constitute a policy." He maintains, though, that we should hand him the keys to discovery so he can determine the number of landlords to whom the city has issued a similar directive. But nowhere in his complaint does Khan allege that the city instructed other landlords not to rent to people with criminal records.

In short, we think *Ellis* controls. We therefore conclude that Khan has failed to allege a plausible claim to relief under the FHA and that judgment on the pleadings was appropriate.

Affirmed.

_____